SWORD S. S. LINE, Inc., et al. v.
VENDRAMIS (two cases).

Nos. 22, 26.

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1940.

See, also, 116 F.2d 669.

Arthur Abrams, of New York City (Maurice V. Seligson, of New York City, of counsel), for appellant Cost Vendramis.

Arthur G. Syran, of New York City, for debtor appellee Sword Steamship Line, Inc.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by a minority stockholder of Sword Steamship Line, the debtor in a proceeding instituted by it under 77B of the Bankruptcy Act. The appeal is from two orders: (1) Authorizing the debtor to borrow $500,000 from Ocean Dominion Steamship Corporation and to charter to the latter three of the debtor's six vessels for a period of ten months with an option to the charterer for a renewal for eight months at a somewhat advanced rate of hire; (2) dismissing the proceeding except as to fixing the claims of a few of the creditors and awarding compensation to the trustee and attorneys.

The order authorizing the $500,000 loan also provided for the mortgaging of the six vessels as security.

Prior to the authorization of the loan, the mortgage, and the charter of the three vessels, Cost Vendramis individually and as representative of the minority interest in the stock of the debtor (which amounted to about 15% of such stock), filed a proposed plan for reorganization of the debtor which he states provided for the sale of one or two vessels of the debtor and the use of a part of the proceeds to pay all creditors in full, the remainder to be used to purchase the minority stock interest at an appraised value to be fixed by the court. It likewise provided for a transfer to a proper person, pursuant to Section 216 (13) of the Bankruptcy Act, 11 U.S.C.A. § 616(13), of any causes of action which the debtor might have against Ferend, the president of the debtor, growing out of his alleged misconduct, and for certain amendments to the certificate of incorpora-

tion, in order to protect the rights of the minority stockholders.

Thereafter the court, on February 7, 1940, referred to Referee Joyce the questions of the applicability of the Chandler Act to the procedure for filing plans of reorganization and to the right of Vendramis to intervene. On February 29, 1940, the day for which the hearing before the referee had been set, counsel for the debtor requested an adjournment in order to make an application for leave to borrow the $500,000 from Ocean Dominion Steamship Corporation and to make use of that sum to pay off the obligations of the debtor and in order thereafter to move for a dismissal of the proceeding. The hearing was adjourned accordingly and thereafter the two orders appealed from were made, the first on March 14, 1940, and the second on April 12, 1940.

The debtor was short of cash at the time when the petition for reorganization was filed and approved in April 1938. In the succeeding twenty-two months nothing was done in the way of proposing a plan, but after the European War between England and France and the German Reich began there was a great betterment in the business of shipping and by the time the original hearing on the plan proposed by Vendramis was set before the referee it became evident that the debtor was entirely solvent though it still owed about $300,000 and needed capital to make its ships available for hire in the then good market. Accordingly it chose to borrow from Ocean Dominion Steamship Corporation in order to pay its debts and secure operating cash. The order of March 14, 1940, authorizing the foregoing transaction, was carried out.

As matters stood at the time of the argument of the appeals the loan of $500,000 had been repaid, as well as all other obligations of the debtor except the administration expenses and a few claims that were still in dispute, for the payment of which funds have been set aside.

 The appellant Vendramis protests against the order authorizing the loan, mortgage and charter on the ground that they constituted a plan of reorganization which was adopted by the court in summary fashion and without the safeguards afforded and prescribed by § 216 and § 221 of the Chandler Act, 11 U.S.C.A. §§ 616, 621, and without any adequate hearing upon the plan proposed by the appellant. The latter admits that the

court could empower the trustee to obtain loans essential to the continuance of the business but says that the loan here was not for that purpose but for refinancing. He does not ask for a rescission of the entire loan transaction since the moneys received were expended for corporate uses and the debt to the Ocean Dominion Steamship Corporation is now fully paid. He does, however, ask for a rescission to the extent of cancellation of the charter so far as it is unexecuted and also of the option to renew it for eight months, and for the appointment of an examiner to bring actions against Ferend for alleged irregularities arising from repair contracts of the debtor's ships by corporations which Ferend is said to have owned. We think that a contract which has been so far completed as the one with the Ocean Dominion Steamship Corporation cannot be rescinded in any way that is just to it. The debtor has obtained from it a large loan as well as a large amount of charter hire. Such a loan would hardly have been made without the inducement of the charter and option and the arrangement cannot be terminated now without depriving the charterer of a substantial portion of the consideration. Moreover, the original creditors (who have now been practically all paid off) and approximately 85% of the stock interests were satisfied with the arrangement. It is true that when a motion was made for authority to enter into the charter a broker made an offer to furnish a principal who would loan $500,000 to the debtor on the security of a mortgage of its vessels and would pay 25 cents per ton more for a ten month charter than was offered by the Ocean Dominion Steamship Corporation. But the name of this broker's principal was not disclosed and neither the district court, nor ourselves, have been afforded any basis for determining whether or not the suggested arrangement was more desirable on the whole than the one actually obtained by the debtor.

 It seems doubtful whether the contract entered into constituted an irregular plan of reorganization or was anything more than a loan and charter of some of the debtor's vessels which would enable it to avoid its financial difficulties by paying its creditors promptly rather than by readjusting its capitalization in a more or less permanent way through a statutory plan of reorganization. We do

not think that an arrangement for the prompt payment in full of all the obligations of a solvent company which lacks liquid assets, accompanied by a charter of its vessels at terms that will enable it within a short time to pay off the current loan, is beyond the jurisdiction of the reorganization court. Here the loan was paid off within about six months after the loan and charter were made. The court certainly had the power to authorize the charter or the loan as separate transactions. Their joinder does not vitiate them.

Vendramis contends that by the termination of the reorganization proceeding he is going to lose the advantage of pursuing causes of action against Ferend in the bankruptcy court and of having his rights as a minority stockholder safeguarded either by payment of the value of his stock, determined by appraisal, or by representation of his minority stock interest on the board of directors.

It is not disputed that the debtor was solvent even when the proceeding was instituted. The increase in the shipping business following the outbreak of the war in Europe indicated that the creditors' interests could be taken care of without adoption of any permanent or long-time scheme of financing.

■ Section 77B of the Bankruptcy Act, as well as the Chandler Act, were adopted as a method of administering the property of an embarrassed debtor more justly and expeditiously than under the old equity receivership, which was also designed for staving off impatient creditors in the course of reorganization. Cf. Duparquet Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591. While § 216 of the Chandler Act provides that a plan of reorganization "may include in respect to stockholders generally or some class of them, provisions altering or modifying their rights, either through the issuance of new securities of any character or otherwise", it starts out by saying that the plan "shall include" such provisions "in respect to creditors generally or some class of them * * *". It would, therefore, seem that after the creditors were paid there was no basis for considering the plan proposed by Vendramis, or any other plan of reorganization, merely for the purpose of adjusting controversies between stockholders, and passing on the claim of Vendramis that his stock should

be purchased or else represented on the debtor's board of directors. While, therefore, the proceeding ought to be brought to an end it should not be terminated without requiring an accounting by the debtor and his cotrustee, in which Vendramis should have an opportunity to file objections to the accounts. If he wishes to pursue Ferend further he may do so by means of a stockholder's bill in the state court.

■ It is contended that the district court did not follow § 236 of the Chandler Act, 11 U.S.C.A. § 636, for the reason that a plan had been proposed by Vendramis and had neither been considered nor disapproved. We think that in a case where all creditors have been eliminated so that the real objects of the statute have been satisfied, it is useless, and hence unnecessary, to have the proposed plan considered when neither it nor any substitute could properly be adopted.

For the foregoing reasons the order authorizing the loan and charter party should be affirmed. The order dismissing the proceeding should also be affirmed in so far as it authorizes the cotrustee and his attorney and the attorneys for the debtor to file applications for allowances, but it should be modified by an additional clause providing that the debtor and the cotrustee, Emory Sexton, file a statement of their accounts herein and that all persons interested in the debtor's estate, including the minority stockholder Vendramis, be afforded the right to be heard as to such accounts and as to the amount of compensation, if any, to be awarded to the cotrustee and his attorney and the attorneys for the debtor. The court should retain jurisdiction for the purpose of settling the accounts and allowances and providing for the payment of any of the creditors whose claims are in dispute and have not already been liquidated. A final decree closing the estate of the debtor should not be entered until the foregoing matters, as well as those provided for in the original order of April 12, 1940, have been completed.

The order of March 14, 1940, providing for the loan of $500,000, the charter, and the mortgage to secure the loan, is affirmed and the order of April 12, 1940, providing for a dismissal of the petition is modified in accordance with the views expressed in the foregoing opinion.