572 So.2d 323 (1990)
SHELL WESTERN E & P, INC., Plaintiff-Appellee,
v.
FLUID DRIERS, INC., United States of America, Internal Revenue Service and Charles Donald Chamblin, Jr., Defendant-Appellant (Chamblin, Jr.), Defendants-Appellees (All other defendants).
No. 89-615.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Rehearings Denied January 16, 1991.
Writ Denied March 22, 1991.
*324 Charles M. Raymond, New Orleans, for plaintiff-appellee.
Kerry A. Kilburn, Lafayette, for defendant-appellant.
Gary R. Allen, Janet Jones, Washington, D.C., Joseph S. Cage, Jr., William Flanagan, Shreveport, for defendants-appellees.
Before STOKER, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
This is an appeal from a concursus proceeding. The case involves an application of the Louisiana Assignment of Accounts Receivable Law, La.R.S. 9:3101-3112 as it read in 1985 (based on Act 319 of 1983). The concursus brought together (1) Fluid Driers, Inc., the assignor, (2) Charles Donald Chamblin, Jr., who acquired the accounts receivable from the original assignee, State National Bank, (3) Shell Western E & P, Inc. (Shell), the debtor, and (4) the United States of America (IRS), the third party in this case. Shell provoked the concursus and deposited $19,944.89 into the registry of the court. Fluid Driers was never served. Chamblin filed a reconventional demand against Shell. The trial court awarded the money to the IRS and denied Chamblin's reconventional demand. Chamblin now appeals. We reverse.

FACTS
The facts were stipulated. On April 11, 1984, Fluid Driers gave a general assignment of accounts receivable to State National Bank (Bank) covering both present and future accounts receivable. A Statement of Assignment of Accounts Receivable was filed in Lafayette Parish on April 13, 1984. In April, May and early June of 1985 the Bank acquired some specific Fluid Driers invoices for work done for Shell, and paid Fluid Driers the agreed price for these invoices.
The IRS made federal tax assessments against Fluid Driers on May 13, 1985. On June 12, 1985, the IRS sent a notice of levy to Shell, for all property it had in its possession belonging to Fluid Driers. The following day, the Bank sent a letter to Shell notifying it of the assignment of accounts receivable from Fluid Driers to the Bank. This letter was received by Shell on June 24, 1985. The IRS filed a notice of federal tax lien in Lafayette Parish against Fluid Driers on June 21, 1985, and another on July 1, 1985.
As of June 12, 1985, Shell owed Fluid Driers $41,886.88 for invoiced work performed. On July 25, 1985, Shell paid $21,942 of that debt to the IRS in response to the notice of levy. The Bank sent a letter to Shell on August 30, 1985, questioning the payment of $21,942 to the IRS. Shell never filed a written claim with the IRS for return of the $21,942 paid.
Two years later on July 28, 1987, the problem being still unresolved, the Bank assigned all its rights, title and claim to Fluid Driers' accounts receivable to Chamblin. Chamblin was a continuing guarantor of Fluid Driers' debts to the Bank. Shell still owed and was holding $19,944.89 due on the Fluid Driers invoices from 1985. On September 3, 1987, Shell deposited that balance into the court registry, and provoked this concursus.
In the concursus, Chamblin claimed ownership of the $19,944.89 in the registry of court. Chamblin also demanded from Shell, by reconventional demand, the amount of $21,942, which had been paid by Shell to the IRS but was allegedly owed to the Bank, Chamblin's assignor of the accounts receivable.
The IRS answered the concursus, praying that the Fifteenth Judicial District *325 Court of Louisiana determine the priority of claims to the funds.
After trial on January 31, 1989, the trial court, without assigning reasons, signed a judgment saying that the IRS was entitled to the money on deposit, and that Chamblin was not entitled to judgment against Shell on his reconventional demand. The trial court ordered that the concursus money be paid to the IRS, and that the reconventional demand be dismissed.

OPINION
Under Louisiana law, the Bank (and its successor in title, Chamblin) at all relevant times was the owner of the right to be paid the $41,886.88 owed by Shell on the Fluid Driers invoices. When it paid the IRS $21,942 in 1985, Shell paid the wrong party. When the trial court awarded the remaining $19,944.89 to the IRS in the concursus in 1989, the trial court, too, gave the money to the wrong party. Our reasons for reaching these conclusions follow.
When the IRS made its levy, the Bank owned the accounts receivable by assignment from Fluid Driers, an assignment made pursuant to the Assignment of Accounts Receivable Law. Therefore, Fluid Driers did not have an interest in the accounts when the IRS placed a tax lien on them. This is our opinion based on the application of Louisiana law to these facts.
La.R.S. 9:3102, which is part of the Louisiana Assignment of Accounts Receivable Law, provides the following:
§ 3102. Validity and effect of an assignment
A. Between the parties every assignment shall operate as an assignment, sale, or pledge, or any combination thereof, depending upon the intent of the parties, at the time the parties enter into the first evidence of the assignment, regardless of the date of the filing of a notice of assignment.
B. Third parties are not affected by an assignment of accounts receivable until the filing of the notice of assignment in the manner prescribed by this Part. Once the notice of assignment is filed, the assignment shall be valid as to third parties and, as to them, shall constitute a completed assignment, sale, or pledge, or any combination thereof, of the accounts receivable covered, notwithstanding the fact that any debtors of the account are not notified of or do not consent to the assignment.
* * * * * *
D. The provisions of this Part shall also apply to even general assignment, whether the assignment is of accounts existing at the time the general assignment is made or of future accounts that have not yet come into existence as of the date of the first evidence of the assignment; whether there is any delivery of the accounts to the assignee; and whether the debtors are notified of or consent to the assignment. As future accounts come into existence the assignee's rights shall rank from the date of filing of the notice.
Fluid Driers executed a general assignment of accounts receivable in favor of the Bank on April 11, 1984. The assignment was recorded in the Lafayette Parish conveyance records on April 13, 1984. An assignment or transfer of credits is a species of sale. La.C.C. art. 2642; Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956). A true assignment, although done for the purpose of serving as a security device, is nevertheless a transfer of ownership. American Bank & Trust Co. v. Louisiana Sav. Ass'n, 386 So.2d 96 (La.App. 3d Cir. 1980). A general assignment can be the vehicle for either transferring ownership, or securing an obligation. Former La.R.S. 9:3101(9), now 9:3101(6). An assignment operates as an assignment, a sale, or a pledge, or any combination thereof, depending on the intent of the parties. La.R.S. 9:3102(A). In this case we find that the intent was to transfer ownership. The specific language of the general assignment uses words of alienation, as follows:
... the assignor does hereby sell, assign, transfer and set over to said Bank, all book accounts, notes receivable, and all moneys payable thereon ... together with all future book accounts, notes receivable, *326 and all moneys payable thereon... that may be or hereafter become due or owing to the assignor from any corporation, person or persons.
In Louisiana, ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. La.C.C. art. 477. Fluid Driers had no right of ownership to the accounts receivable after the assignment.
Between April 16, 1985, and June 3, 1985, funds representing the agreed price for the invoices that Fluid Driers sent to Shell, were advanced to Fluid Driers by the Bank. The Bank bought these invoices and expected to be paid by Shell.
The IRS in pursuit of taxes unpaid by Fluid Driers filed a notice of a tax lien on June 21, 1985, against the accounts receivable owned by the Bank. At this time Fluid Driers had no interest in the accounts receivable. In Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960), the Supreme Court explained:
The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute."
These principles were recently reasserted in United States v. National Bank of Commerce, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Since Fluid Driers had no legal interest in the accounts receivable, the federal tax lien could not attach. Thus, the only valid claim against the accounts receivable was that of the Bank.

IRS
In its brief before us on this appeal the IRS states that the government does "not dispute that, as of June 12, 1985, the date the notice of levy directed to Shell Western... was issued, that the bank had perfected an assignment" of Fluid Driers' accounts receivable. The government goes on in its brief to point out that it has never contested that the Bank (and by assignment Chamblin), had rights to the funds superior to the IRS. Its argument is that Chamblin has lost the right to get back the $21,942 paid to the IRS on July 25, 1985, because of a federal statute of limitations of nine months.
We do not agree with the government that it is a question of priority. Our conclusion of law is that the IRS had, and has, no right to the funds. Whether Chamblin's or Shell's right to recover the money paid to the IRS is time barred, however, has nothing to do with Chamblin's reconventional demand. Nobody in this concursus is trying to get back from the United States what was paid to it in 1985. Chamblin's reconventional demand is against Shell only, and it is based on La.R.S. 9:3108 which states that, under the circumstances, Shell still owes the accounts.

SHELL
Shell's first argument on this appeal is that the general assignment of accounts receivable was replaced by specific assignments in 1985, from April to June when the Bank purchased invoices from Fluid Driers. It argues that these new specific assignments were defective because no notice of assignment was filed, pursuant to the Assignment of Accounts Receivable Law.
We find no merit to this argument. As each set of invoices was purchased in 1985, "Assignments of Accounts", listing the invoices, were executed, and some of these were recorded. According to the Bank's officer whose testimony in deposition form was introduced in evidence, along with the stipulated facts, these documents were executed merely to enable the Bank to look at each invoice. They were not intended as assignments, and there was no intent to record them. Some employee of the Bank recorded them, unnecessarily. We find no evidence that the lists of invoices were intended to operate as novated assignments.
*327 As we appreciate Shell's next argument, it is based on the assumption that the Bank's interest was a perfected security interest but something short of ownership, and that, therefore, Fluid Driers had a property interest in the accounts receivable to which the federal tax lien could attach. Based on this assumption, Shell reasons that there were competing interests and therefore a question of priority, a subject governed by federal law, between the Bank's lien, on account of its loans secured by an assignment, and the lien of the IRS, founded on its tax assessment and notice. It argues that the notice of tax levy was superior to the assignment of accounts receivable, and that it became obligated to pay the IRS.
We do not agree. Shell received actual notice from the Bank on June 24, 1985, that Fluid Driers had assigned its accounts receivable to the Bank. Shell paid the IRS on July 25, 1985, some, but not all, of the amounts owed on Fluid Driers' invoices. There is no evidence in the record and it is not stipulated exactly when Shell got notice of the IRS levy. It is clear, however, that Shell had actual notice of the Fluid Driers assignment of accounts receivable to the Bank before it paid the IRS $21,942. The general assignment in the present case was a transfer of ownership. We never reach the question of deciding priority of competing claims. Fluid Driers had no ownership rights in the property at the time the federal tax levy was made on the property.
Shell makes one remaining contention, and that is that Chamblin, as assignee of the Bank, failed to give Shell notice of the Bank's assignment to Chamblin. Our response is that with respect to the $21,942 paid by Shell to the IRS, the Bank was the owner of the account when it was paid, not Chamblin. As to the remainder, which was put into the concursus after the Bank-to-Chamblin assignment, Chamblin's reconventional demand was the only notice required.

CONCLUSION
This brings us to a consideration of the rights and liabilities of the parties before us on this appeal. This requires an application of La.R.S. 9:3108, which reads the same now as it did in 1985:
§ 3108. Rights and liabilities of parties
A. Except as provided in Subsections B and C, an account debtor who has received written notice of the assignment will not be discharged from his debt if he pays anyone other than the assignee.
B. The rights of an assignee against the account debtor shall be subject to any dealing by the debtor with the assignor, any other assignee, or other successor in interest of the assignor until the account debtor receives written notice from or on behalf of the assignee or the assignor of the assignment of the particular account of which he is debtor. In any case in which an account debtor is not notified of the assignment of the account made in compliance with the provisions of this Part and, in good faith, makes payment of the account in whole or in part to the assignor, or to a subsequent assignee, purchaser, or transferee of the account who shall have notified the debtor of the assignment, purchase, or transfer, then to the extent of payment, the debtor shall be exonerated of liability to make payment to the first assignee; however, the person to whom payment was made shall be accountable and liable to the assignee for the sums received.
C. The account debtor may, at his option, commence concursus proceedings instead of making payment to the debtor or subsequent assignee as provided in Subsection B.
We interpret the above section to provide that Shell, by having commenced concursus proceedings, is discharged to the extent of the debt paid into the concursus, $19,944.89. However, we find that the trial court erred in its ruling in the concursus proceeding awarding the money to the IRS. We reverse the judgment rendered in the concursus and render judgment that Charles Donald Chamblin, Jr., is the owner of the sum deposited in the registry of the court.
As to the claim for the balance, or $21,942, which Shell improperly paid to the *328 IRS on July 25, 1985, we hold that Shell is not discharged from its debt to the Bank, and to the Bank's assignee, Chamblin. In the concursus, Chamblin filed a reconventional demand against Shell for the recovery of that debt. A notice of assignment was properly filed in the Lafayette Parish conveyance records on April 13, 1984. This notice was in substantial compliance with the requirements of La.R.S. 9:3103. Additionally, Shell received actual notice that the very accounts it was holding were assigned to the Bank, by certified mail on June 24, 1985. Because it had actual written notice of the assignment of the particular accounts one month before it paid the IRS, Shell cannot rely on the exoneration of liability provision of La.R.S. 9:3108(B), which protects the good faith account debtor against paying twice if he has not received written notice. An account debtor who has received written notice of the assignment will not be discharged from his debt if he pays anyone other than the assignee. La.R.S. 9:3108(A). Since Shell is not discharged from the debt to Chamblin, the dismissal of the reconventional demand was improper. We reverse that dismissal and give judgment to Chamblin against Shell for the sum of $21,942, with legal interest from July 25, 1985, until paid, together with all costs of this proceeding, below and on appeal.
REVERSED AND RENDERED.