**In re PERNIE BAILEY DRILLING COMPANY, INC., Debtor.**

**Hugh William THISTLETHWAITE, Jr., Trustee of Pernie Bailey Drilling Company, Inc., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of First Republic Bank Houston, N.A. Surviving Entity Following Merger With Interfirst Bank Fannin, Defendant.**

**Bankruptcy No. 486–00380–LO–07. Adv. No. 87–AV–50150.**

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

June 28, 1991.

Hugh William Thistlethwaite, Jr., Opelousas, La., Trustee.

Jack Caldwell, Milling, Benson, Woodward, Hillyer, Pierson & Miller, Lafayette, La., for Trustee.

Robert D. Daniel, Hirsch & Westheimer, Houston, Tex., for FDIC.

Robert O. Thomas, Jackson & Walker, Houston, Tex., for NCNB Texas Nat. Bank.

## MEMORANDUM OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

This matter came before the court on a motion for partial summary judgment filed on behalf of the defendants, NCNB Texas National Bank and the Federal Deposit Insurance Corporation, and a cross-motion for partial summary judgment filed on behalf of the Chapter 7 trustee.

### Facts

Pernie Bailey Drilling Company, the debtor in the bankruptcy case, was a company organized under the laws of Texas engaged in onshore contract drilling in both Louisiana and Texas. From 1981 through 1986, InterFirst Bank Fannin [1] lent money

---

1. InterFirst Bank Fannin has undergone quite a metamorphasis from the mid-1980's to the present time. The holding company that owned InterFirst Bank Fannin merged with Republic Bank Corporation and was given the name First Republic Bank Fannin. Subsequently that entity was merged on July 29, 1988, into the First Republic Bank of Houston, N.A. First Republic

Bank of Houston, N.A. was declared insolvent and the FDIC was appointed as receiver. Pursuant to a purchase and assumption agreement with the FDIC, NCNB Bank of Texas purchased certain assets of First Republic Bank of Houston, N.A., including the debtor's indebtedness. The term "Bank" in this opinion refers to all of

to the debtor. The debtor executed a number of security agreements in conjunction with loans made by the Bank. The following instruments are relevant:

1. General Assignment of Accounts Receivable executed by the debtor on March 23, 1982. The document, titled "Security Agreement—Assignment of Contract Rights", purported to grant the Bank a security interest in *"all accounts receivable now owned or hereinafter acquired"* by the debtor. [Emphasis supplied]. Pursuant to La. R.S. 9:3102,[2] this document was a valid assignment.

2. Notice of Assignment of the receivables dated May 21, 1984. This document was recorded in twenty-one Louisiana parishes on May 29 and 30, 1984.

3. A document executed February 5, 1986, purporting to assign to the Bank all amounts owed to the debtor by J.P. Owen and Company.[3] J.P. Owen and Company itself was in bankruptcy.

Through compromise and order of the court signed March 23, 1987, the claim against J.P. Owen was reduced from $1,929,636.00 to an allowed claim in the amount of $1,791,538.57. (The dollar payoff on this claim will be a tiny percentage of this.)

On March 11, 1986, the debtor Pernie Bailey Drilling Company, filed a voluntary Chapter 11 bankruptcy petition. The case was converted to Chapter 7 on November 25, 1986, and a Chapter 7 Trustee was appointed. This adversary proceeding was commenced by the Trustee on October 28, 1987. The Trustee alleged four counts in the complaint. The status of those counts is as follows:

I. Count I sought equitable subordination under 11 U.S.C. Sec. 510 of the Bank's claim as a creditor of the debtor. It alleged that the Bank engaged in inequitable conduct *vis-a-vis* the debtor which resulted in injury to the debtor and unfair advantage to the Bank. Although the Bank had

---

the banks collectively unless the text indicates otherwise.

**2.** "Sec. 3102. Validity and effect of an assignment

A. Between the parties every assignment shall operate as an assignment, sale, or pledge, or any combination thereof, depending upon the intent of the parties, at the time the parties enter into the first evidence of the assignment, regardless of the date of the filing of a notice of assignment.

B. Third parties are not affected by an assignment of accounts receivable until the filing of the notice of assignment in the manner prescribed by this Part. Once the notice of assignment is filed, the assignment shall be valid as to third parties and, as to them, shall constitute a completed assignment, sale, or pledge, or any combination thereof, of the accounts receivable covered, notwithstanding the fact that any debtors of the account are not notified of or do not consent to the assignment.

C. An assignee under a valid notice of assignment shall have a superior claim to the accounts assigned and their proceeds as against all other creditors whose claims or security arose or are perfected after the filing of the notice of assignment.

D. The provisions of this Part shall also apply to every general assignment, whether the assignment is of accounts existing at the time the general assignment is made or of future accounts that have not yet come into existence as of the date of the first evidence of the assign-

ment; whether there is any delivery of the accounts to the assignee; and whether the debtors are notified of or consent to the assignment. As future accounts come into existence the assignee's rights shall rank from the date of filing of the notice."

Provided there is compliance with these provisions, they apply retroactively even to assignments made prior to the effective date of the Assignment of Accounts Receivable Act. *See,* La.R.S. 9:3110(B). No filing of a Notice of Assignment is necessary to make it effective as between the parties themselves. *See* La.R.S. 9:3104(D).

**3.** FDIC's answers to interrogatories characterize the February 5, 1986 document in the following manner: "... The so-called 'Assignment' dated February 5, 1986, was executed in connection with the filing of a proof of transfer of claim in the J.P. Owen bankruptcy proceeding solely for the purpose of facilitating the collection of the J.P. Owen Receivable and did not transfer any greater rights in such receivable to the Bank than had already been transferred by virtue of the 'Security Agreement—Assignment of Contract Rights.' [i.e. the pledge executed March 23, 1982]." (Answer to Interrogatory #11). None of the materials presented by the parties and considered by the court with respect to the present cross motions for partial summary judgment provide any reason to believe that the February 5, 1986 assignment to the Bank of the J.P. Owen receivables gave the Bank any additional rights that it did not already have.

asserted that a deficiency of $2,652,966.65 existed after foreclosure on collateral following lift of the automatic stay, the Bank failed to timely file a proof of claim for the deficiency amount. The court rejected the Bank's contention that it had timely filed an informal proof of claim. (Order of July 27, 1989). Because the Bank therefore has no claim in the bankruptcy proceeding, there is no claim to subordinate.

II. Count II sought rescission of the Bank's security agreements with the debtor on the ground that duress in their making vitiated consent. The court subsequently ruled that the *D'Oench, Duhme* doctrine did not bar the duress claim. *See In re Pernie Bailey Drilling Co., Inc.*, 111 B.R. 565 (Bankr.W.D.La.1990) and Judgment dated February 28, 1990. However, the close relationship between the duress claim and the equitable subordination claim, added to the fact that collateral is non-recoverable because it has passed to innocent third parties, has persuaded the Trustee to abandon this claim.

III. This portion of the trustee's complaint sought to avoid two transfers under 11 U.S.C. Sec. 548 as fraudulent conveyances: (1) the debtor's assignment of the J.P. Owen receivables to the Bank in February 1986 (the issue now before the court on motions for summary judgment), and (2) the debtor's transfer of the "Futrol Lease" to William M. Washburn. The latter claim was dismissed as to Washburn by stipulation of the parties (Judgment dated April 4, 1988), and the Trustee has declared his intent not to pursue the Futrol Lease claim against remaining defendants.

IV. The final count consisted of claims relative to the J.P. Owen receivables and the Futrol Lease. The Trustee originally asserted these two transfers constituted voidable preferences under Sec. 547 of the Bankruptcy Code. The Trustee has now abandoned this position.

The question now before the court concerns whether the debtor's assignment of the J.P. Owen receivables to the Bank constituted a transfer which the Trustee can avoid pursuant to 11 U.S.C. Sec. 548.

On December 5, 1990, a hearing was held on the cross motions for summary judgment. The following attorneys appeared on behalf of their respective clients: Jack C. Caldwell and Karen Bordelon for the Trustee Hugh W. Thistlethwaite, Jr., Robert O. Thomas for NCNB Texas National Bank, and Robert D. Daniel for the FDIC. At the conclusion of the hearing, the court took the matter under advisement.

This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b)(2). After review of the pleadings and briefs, arguments of counsel, answers to discovery requests, and affidavits, the court issues these findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052.

### Summary Judgment

"Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Bankruptcy Rule 7056 incorporates Fed. R.Civ.P. 56 setting forth the standards to be applied by the court in determining whether to grant a motion for summary judgment. Rule 56 provides, in pertinent part:

"... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ..."

Grant of a motion for summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The existence of a factual dispute does not necessarily preclude summary judgment; rather, the court must initially determine the existence of an issue of fact which is both "genuine" and "material". *In re GHR Energy Corp.*, 62 B.R. 226, 231 (Bankr.S.D.Tex.1986). In the case at bar,

the parties agree as to all facts needed for this court's disposition of their motions. What is in dispute are the legal effects of those facts.

█ In this case, the agreement of March 23, 1982, by which the debtor assigned all rights to future receivables, transferred rights to the Bank that are recognized under the Louisiana Assignment of Accounts Receivable Act. La.R.S. 9:3103–9:3110. The assignment was valid between the parties at the time the assignment was made. *See* La.R.S. 9:3102.

█ The assignment was later recorded in the public records of various parishes on May 29 and 30, 1984. Once the Notice of Assignment was recorded pursuant to the Louisiana Assignment of Accounts Receivable Act, the assignment became valid and perfected as to third parties. Bankruptcy Code Section 548(d)(1) provides in pertinent part:

"... [A] transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law [in this case, the Assignment of Accounts Receivable Act] permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee...."

Under Sec. 548(d)(1), the transfer to the Bank of the J.P. Owen receivables occurred no later than May 30, 1984, when rights against third parties were perfected. The transfer cannot have constituted a fraudulent conveyance under Section 548 of the Bankruptcy Code. Transfers which are avoidable under Section 548 have to be made within one year before the date of filing the petition. The petition in this case was not filed until March 1986.

█ But the Trustee has another argument: that the Bank's security interest in accounts receivable expired in 1989 for lack of reinscription, making the transfer avoidable by the Trustee. While the Trustee refers to Bankruptcy Code Sec. 544(a) in support of this argument, that provision only places the Trustee in the shoes of a creditor "at the time of the commencement of a case." At that time (1987), the Bank had a security interest in J.P. Owen receivables perfected against creditors—in fact, perfected well before by virtue of the 1984 recordation of the Notice of Assignment of the accounts receivable pledged to it in 1982.

La.R.S. 9:3106 governs renewal of assignments and provides:

"D. The effect of a notice of assignment shall cease if the inscription has not been renewed by reinscribing within five years from the date of the filing of the original notice of assignment. Reinscription shall renew the effect of the notice of assignment for five years from the date of reinscription."

In this case, the parties agree there was no reinscription. Under normal circumstances, perfection of the Bank's security interest against third parties, would have lapsed on May 29 and 30, 1989.

The Trustee would have the court believe that perfection has been undone even though both the bankruptcy case and this adversary proceeding were initiated prior to the time that reinscription was needed; that the transfer of May 29 and 30, 1984 has therefore been rendered an absolute nullity; and that therefore the date of the transfer should be pushed back to February 5, 1986, so that it would be avoided because within one year of bankruptcy. This court is unable to accept this argument. The precise issue raised by the Trustee is *res nova,* one of first impression. This court has been able to find no case in which a fraudulent conveyance action under Bankruptcy Code Sec. 548 has been affected by a failure to reinscribe, file a UCC continuation statement, or take any similar action required by state law to prevent perfection of a security interest from lapsing.

The Trustee concedes that under the Bankruptcy Code, filing of the bankruptcy petition does relieve the creditor of the requirement for reinscription, *but only so long as the automatic stay is in effect.* The Trustee relies on *In re Bond Enterprises, Inc.,* 54 B.R. 366, Bank.L.Rep.P. 70,811 (Bankr.D.N.Mex.1985). He reasons

that since the automatic stay was lifted April 10, 1986 in order to permit the Bank to exercise its full contractual, legal and equitable rights and remedies against a laundry list of assets including the General Assignment of Accounts Receivable executed March 23, 1982, the Bank had the burden of reinscription, and that lack of reinscription resulted in the J.P. Owen receivables becoming an unencumbered asset of the bankruptcy estate on May 30, 1989, the expiration date of the Notice of Assignment. However, the Trustee's argument misconstrues *Bond,* and ignores that *Bond* involved a Chapter 11 case while the present case was converted to Chapter 7 long before any reinscription was required.

A close reading of the analysis presented in *Bond* gives a result opposite from the one urged by the Trustee. *Bond* reasoned that the filing of a continuation statement (the common law equivalent of reinscription), which operates to continue the effectiveness of a perfected security interest, is an act to perfect a lien against property of a debtor within the meaning of Sec. 362(a)(4) and was precluded by the automatic stay.[4] *Bond* at 369. The next question addressed by the court was "whether ... a perfected security interest, valid at the time bankruptcy proceedings are initiated but due to expire during the pendency of the bankruptcy proceedings, remains perfected until termination of the proceedings or lapses in the absence of the filing of a continuation statement." *Bond* at 369.

*Bond,* in well-written analysis, determined that the filing of a continuation statement was not necessary to preserve the secured creditor's rights once the bankruptcy petition was filed. The court wrote:

> "First, the critical time for determining the respective rights of a debtor and its creditors is the date of the filing of petition in bankruptcy. *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658 (2d Cir.1940); see also *Delia Brothers,* 29 U.C.C.Rep. at 1448. In *Isaacs v. Hobbs*

*Tie & Timber Co.,* 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645, 667 (1930), the Supreme Court concluded that 'valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved.' In the instant case, to permit the lapsing of defendant's security interest in the license, because of its failure to file a continuation statement following the expiration date of the security interest during the pendency of bankruptcy proceedings would be inconsistent with these principles.

> Second, the purpose of the filing requirements under Sec. 9–403 of the Uniform Commercial Code is to provide adequate notice of a creditor's interest in property to other parties. *[In re] Chaseley's Foods,* 30 B.R. [452] at 455 [ (N.D.Ind.1983) ]; *see also Delia Brothers,* 29 U.C.C.Rep. 1446. The Court in *Chaseley's Foods* noted that

>> the 'notice' purpose of the continuation statement requirement is not served once a bankruptcy petition is filed. The only parties which can possibly be injured by failure to file a continuation statement once a bankruptcy proceeding is pending are creditors who obtain their liens after the financing statement expires. However, because the trustee takes possession of the debtor's property once a petition is filed, and this possession is open and notorious, these creditors should not need the protection of a continuation statement. *In re Delia Brothers, Inc.,* 29 U.C.C.Rep. 1446, 1449 (Bankr. S.D.N.Y.1980); *In re South County Motel Corp.,* 19 U.C.C.Rep. 1254, 1258 (Bankr.D.R.I.1976).]

> *Chaseley's Foods,* 30 B.R. at 455. '[R]efiling ... could have no more than a ceremonial effect.' *In re South County Motel Corp.,* 19 U.C.C.Rep. 1254, 1257 (D.R.I.1976)."

54 B.R. at 369–370.

This court notes that some states have adopted versions of Article 9 of the Uniform Commercial Code that explicitly toll

---

**4.** While various provisions of the Bankruptcy Code, including Sec. 362(b)(3), may raise some doubt about the correctness of this conclusion, it is unnecessary to address that issue here.

the period for filing a continuation statement until termination of insolvency proceedings. The obvious purpose is to free creditors from being obliged to keep interests perfected where this would serve no purpose. However, even when such provisions do not exist, a majority of courts hold that the rights of the parties should be frozen as of the time of the bankruptcy filing. *See In re Holmar Distributors,* 116 B.R. 328, 336–337 (Bankr.D.Mass.1990); *In re Paul,* 67 B.R. 342, 344–345 (Bankr. D.Mass.1986). The filing of bankruptcy fixes priorities so that the order of priority is untainted by post-petition jockeying for position, and it also (as a matter of bankruptcy policy) preserves all valid liens existing at the time the bankruptcy case is commenced. "Just as a creditor's actions after the petition will not affect the priority of other creditors' claims, his inaction during the stay should not affect his own priority", *Paul* at 345–346. While the stay was lifted in the Chapter 11 phase of the present case, there was no need to reinscribe. The case was converted to Chapter 7 on November 25, 1986, well before any lapse of the Notice of Assignment, and the automatic stay was reinstated as a matter of law. The rights of the parties remained fixed, and no one needed the protection of reinscription. Since Pernie Bailey, the debtor, was being liquidated in Chapter 7, there were no innocent third party creditors who could obtain liens against the debtor, thus making recordation and notice to them irrelevant.

On similar facts, but not involving a Sec. 548 fraudulent conveyance claim, Bankruptcy Judge Wesley Steen appears to have reached the same conclusion this court reaches today: "... [T]he court finds that reinscription is not necessary and that the statement of the assignment of accounts receivable is effective for the reasons stated in *In re Bond....* The substance of that conclusion is that the validity of the assignment ... is tested at the date of filing." *In re RDR Systems Development, Inc.,* 57 B.R. 540, 544 (Bankr.M.D.La.1986).

*Conclusion*

This court concludes the Trustee cannot avoid the debtor's assignment of accounts receivables to the Bank because that transaction occurred in March, 1982 and was perfected as to third parties in May 1984, more than one year before the debtor filed bankruptcy in March 1986. The Bank's failure to reinscribe its Notice of Assignment, after the case was converted to Chapter 7, is irrelevant since all rights were fixed no later than the date of the conversion.

The Bank's motion for summary judgment is granted in that the Court determines the debtor's assignment of the J.P. Owen receivables does not constitute a fraudulent transfer made one year prior to bankruptcy which the Trustee can avoid under 11 U.S.C. Sec. 548. The Trustee's cross-motion for summary judgment on the same issue is denied.

The court requests that counsel for the parties confer on preparation of a judgment. The court will sign an appropriate judgment consistent with this opinion.