**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 92-4209

---

IN THE MATTER OF:  PERNIE BAILEY DRILLING CO., INC.,

                                        Debtor.


W. SIMMONS SANDOZ, Successor Trustee
to William F. Baity, Successor Interim
Trustee to Hugh William Thistlethwaite,
Jr., Etc.,

                                        Plaintiff-Appellant,


                        versus


FEDERAL DEPOSIT INSURANCE CORPORATION,
ETC., and NCNB TEXAS NATIONAL BANK,

                                        Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

May 28, 1993

---

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

The Chapter 7 bankruptcy trustee appeals the ruling of the bankruptcy court, affirmed by the district court, concerning the validity of a secured interest in certain accounts receivable.  For the reasons assigned, we affirm.

Background

In March 1982, Pernie Bailey Drilling Company and Interfirst Bank Fannin[1] executed an agreement entitled "Security Agreement -- Assignment of Contract Rights" to secure a series of loans. The instrument gave the Bank a security interest in all of Bailey's present and future accounts receivable. The instrument was duly recorded in the mortgage records of various Louisiana parishes in May of 1984 but was never reinscribed.[2]

In February 1986, J.P. Owen & Co. owed Bailey $1,368,490. This debt is at the core of the present controversy. To facilitate collection the Bank required Bailey to specifically assign all amounts owed by Owen. The Bank sent Owen notice of this assignment, directing that all payments be made directly to it.

In March 1986, Bailey filed for bankruptcy protection under Chapter 11. The Bank promptly requested relief from the automatic stay imposed by 11 U.S.C. § 362 to enable it to exercise its rights against various collateral, including the Owen receivable. The bankruptcy court, in lifting the automatic stay by order dated April 10, 1986, specifically provided that the lifting of the stay would remain effective in the event of a conversion to a Chapter 7 proceeding. In November 1986, Bailey's Chapter 11 was so

---

[1] For reasons not relevant to the issues raised in this case, the Bank's interest ultimately fell into the hands of the FDIC. For the sake of clarity, "the Bank" will refer to all successors to Interfirst Bank Fannin's interest.

[2] To remain effective, a notice of assignment of accounts receivable must be reinscribed within five years. La. R.S. 9:3106.

2

converted.

The newly appointed Chapter 7 trustee invoked 11 U.S.C. § 548 and filed the instant suit challenging the validity of the 1986 assignment as a fraudulent conveyance. He sought a return of the Owen receivable to the bankruptcy estate. The sauce thickens -- Owen also was in bankruptcy. The Owen bankruptcy court ultimately recognized the Bank's claim and set aside the funds in its favor pending resolution of the fraudulent conveyance claim in the Bailey case. During this period the notice of assignment, filed in May 1984, prescribed.

The Bailey court rejected the trustee's fraudulent conveyance theory, holding that the Bank's security interest remained effective throughout the Bailey bankruptcy. According to the bankruptcy court, the effectiveness of the notice did not cease because the rights of the parties were fixed well before the supposed lapse in recordation. The court suggested that the 1986 conversion to Chapter 7 reinstated the stay as a matter of law. Regrettably, the lack of a single explanation for the court's conclusion, understandable as it is in view of the posture of the case, has encouraged both parties to obfuscate. The district court affirmed; the trustee timely appealed. The validity of the Bank's security interest in the Owen account is the sole issue presented on appeal. Ultimately, the question is whether the Bank owned the Owen receivable before its notice prescribed or, if not, whether the Bank was still obliged to reinscribe following Bailey's filing under Chapter 11 and converting to Chapter 7.

3

## Analysis

The trustee maintains that the Bank's failure to reinscribe terminates its perfected status under Louisiana law[3] and, accordingly, that the Owen receivable belonged to the bankruptcy estate. The trustee concedes that the recordation was effective at the time Bailey filed the Chapter 11 petition.[4] He also concedes that when the Chapter 11 proceeding was initiated, the automatic stay fixed the status quo and reinscription was thereby prevented.[5] It is the trustee's position that when the bankruptcy court lifted the stay, allowing the Bank to exercise its rights in the Owen receivable, it concomitantly revived the Bank's duty to reinscribe its notice of assignment. Thus, the trustee attacks what he perceives to be the bankruptcy court's conclusion that the conversion to Chapter 7 reinstated the stay as a matter of law, and argues that the Bank's secured status failed because the filing ostensibly lapsed shortly thereafter.

We are not persuaded. In this case the court lifted the stay in the Chapter 11 proceeding to allow the Bank to take the assets

---

[3] Neither party disputes the role of Louisiana law in determining whether the bank's claim remains secured. For a discussion of the relationship between the Bankruptcy Code and state law see **In re Groetken**, 843 F.2d 1007 (7th Cir. 1988), and **R.I.D.C. Indus. Dev. Fund v. Snyder**, 539 F.2d 487 (5th Cir. 1976). Our disposition of the case pretermits such etherial concerns.

[4] La. R.S. 9:3106 provides that the recording of such an interest remains effective as to third parties for five years.

[5] **In re Bond Enterp., Inc.**, 54 B.R. 366 (Bankr. N.M. 1985).

to which it was entitled under the security agreement, including the Owen receivable.  The Bank cites Louisiana law in support of its argument that an assignment "although done for the purpose of serving as a security interest, is nevertheless a transfer of ownership" if the parties so intended; thus it owned the Owen receivable from its inception.[6]  Likewise, the Bank also points out that Louisiana law provides that the assignee of an account receivable has the right to receive proceeds of the receivable when, as the Bank did here, it serves appropriate notice of the assignment on the account debtor, in which case the Bank owned the Owen receivable before the Bailey bankruptcy.[7]

The character of the Owen receivable at its inception depended on the intention of the parties, an intention not clearly defined *a` quo*.  The bankruptcy court did find, however, that whatever rights the Bank had to the receivable resulted from the 1982 security agreement/assignment and 1984 recording thereof, and not from the 1986 assignment.[8]  Perhaps the court declined to consider whether the 1986 assignment transferred ownership because it found the 1982 pledge to be sufficient to dispose of the issue regardless of whether it transferred ownership.  Perhaps the court viewed the

---

[6]     **Shell Western E & P, Inc. v. Fluid Driers, Inc.**, 572 So.2d 323, 325-26 (La.App. 1990), cert. denied, 575 So.2d 823 (1991).

[7]     La. R.S. 9:3108.

[8]     The conclusion stems from the court's reading of La. R.S. 9:3103-9:3110.

1982 assignment to be a transfer of ownership under the Louisiana Assignment of Accounts Receivable Act,[9] making the 1986 assignment superfluous. In either case, the distinction is not dispositive in light of the treatment accorded the asset in the bankruptcy proceedings before the purported lapse in recordation.

The Bank's rights in the Owen receivable came to fruition before the statutory lapse in the recordation on May 30, 1989 because of a number of acts sufficient in themselves or in combination with others: (1) Bailey's filing under Chapter 11;[10] (2) the Bank's notice to Owen of the assignment which, under Louisiana law, provides the assignee with the superior right to payment;[11] (3) the Bank's filing of a notice of claim; (4) the lifting of the automatic stay and recognition by the Bailey court of the Bank's vested right to the Owen receivable;[12] and,

---

[9] La. R.S. 9:3101 *et seq*.

[10] The automatic stay is imposed immediately upon the filing and the secured status *vel non* of creditors is generally regarded as fixed at that point for the protection of the creditors "in a manner consistent with the bankruptcy goal of equal treatment." **Hunt v. Banker's Trust Co.**, 799 F.2d 1060 (5th Cir. 1986); 11 U.S.C. § 362. Courts have noted that requiring reinscription after commencement of bankruptcy proceedings would serve no purpose, particularly when the case is converted to liquidation. See **Bond** (collecting cases).

[11] La. R.S. 9:3108; **Coastal Credit Co. v. American Waste & Pollution Control Co.**, 583 So.2d 553 (La.App. 1991); **Shell Western**, 572 So.2d at 328 (assignee's rights are superior to the assignor upon notice to the debtor).

[12] As noted, we agree with the holding in **Bond**. We also agree with the observations made therein that (1) "the critical time for determining the respective rights of a debtor and its

6

ultimately, (5) the formal recognition of the Bank's rights to the proceeds in the Owen bankruptcy proceeding. We focus our attention on the last event.

When Owen sought the protection of the bankruptcy code, the rights of his creditors became subject thereto. When the court confirmed the Owen plan Bailey's trustee's rights and those taking from and through it were dramatically impacted. Under the bankruptcy code the claims of creditors arising prior to the confirmation are discharged and are payable only as provided by the plan.[13] The only enforceable debts of Owen, therefore, were those recognized in the plan. Only the Bank asserted a relevant debt recognized in the Owen plan.

The judicial recognition of the assignment and the allowance of the debt formally, finally, and conclusively terminated the Bank's security interest and created an actual right to the proceeds. Stripped to essentials, the Owen receivable represents a right to receive payment from a third party and is a "property interest," in the sense that it is a thing that may be sold, given

_____

creditors is the date of the filing of a petition in bankruptcy" and (2) "filing of a [notice of reinscription] would . . . violat[e]" the automatic stay. **Bond**, 54 B.R. at 369. The trustee relies heavily on dicta in **Bond** suggesting that an order lifting the automatic stay invariably revives the duty to reinscribe. We do not agree with this broad reading of **Bond**, and conclude to the contrary. Where, as here, the creditor seeks not only payments already made but also rights to future proceeds, the order lifting the stay must expressly address the creditor's ability to reinscribe before it may be given that effect.

[13] 11 U.S.C. § 1141; **In re Serv. Decorating Co.**, 105 B.R. 859, 862 (N.D. Ill. 1989).

away, or encumbered. After the Owen plan was confirmed, only the Bank possessed that right. To reclaim the asset it was incumbent upon the trustee to defeat the transfer of ownership between the Bank and Bailey whenever it occurred, as he unsuccessfully attempted to do.[14]

When the Owen court allowed the Bank's claim under the assignment, it stated that "all rights of the trustee to avoid or otherwise contest the validity or effect of said claim are fully reserved." The trustee seizes on this language and argues that the order did not establish any irrevocable rights to the Owen receivable. The obvious aim of this language, however, was merely to recognize the trustee's fraudulent conveyance claim in the Bailey bankruptcy proceeding and to preserve his effort to avoid such a transfer. This qualification was appropriate in light of the trustee's ongoing attempt to reclaim the Owen receivable under section 548, but we cannot be oblivious to the trustee's failure in that regard.

We conclude and hold that reinscription of the notice of assignment was not necessary to preserve the Bank's right to the proceeds of the Owen receivable.

We find no merit in the trustee's conclusionary complaint that the Bank has taken fatally inconsistent positions in this litigation as respects the challenged asset. The mere assertion of alternate legal positions is not unusual and, most certainly, is

---

[14] The trustee failed in his effort to set aside the transfer under 11 U.S.C. § 548. That ruling has not been appealed.

8

not necessarily anathema; and, in any event, we note the inequity of that position in view of the fact that the trustee himself stands *in pari delicto*.

The judgment appealed is AFFIRMED.