609 So.2d 1190 (1992)
Earl DUPUIS, et al., Plaintiffs-Appellants,
v.
Edwin FAULK, et al., Defendants-Appellees.
No. 91-1139.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*1191 Victor A. Ashy, LaFayette, for plaintiff-appellant, Dawn Dupuis.
Earl J. Dupuis, in pro. per.
Paul J. Hebert and Fred Davis, Abbeville, for defendant-appellee, Firm.
Ronald Melbeck, Abbeville, for defendant-appellee, Broussard.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
SAUNDERS, Judge.
This is an appeal from a judgment on a rule to determine priority of claims on the proceeds of a $37,500 settlement check. The main issue on appeal is whether advances for medical and living expenses are included in the attorney's privilege granted by La.R.S. 9:5001 and R.S. 37:218.

FACTS
The money at issue is the proceeds of a personal injury suit filed by Earl Dupuis and his wife, Dawn Dupuis, entitled "Earl Dupuis v. Edwin Faulk, et al, Docket No. 89-57233-C, 15th Judicial District Court, Parish of Vermilion, Louisiana." The parties involved, Dawn Dupuis, Ernal Broussard, and the law firm of Sonnier, Hebert & Hebert, were aware of their conflicting claims at settlement, and as part of the "Agreement and Partial Release," agreed that the proceeds would be deposited into the Registry of the Court and that no transfer of funds or disbursement would occur without a hearing to determine the priority of claims. As part of the agreement, Dawn Dupuis settled her claims in the suit for $1,000. This agreement was signed by all the parties in April of 1991.
There are three claims being made for the money including the attorney's privilege of the law firm of Sonnier, Hebert & Hebert, attorneys for Mr. Dupuis in the personal injury suit. Sonnier, Hebert & Hebert asserted the privilege not only for its professional fee and costs of litigation, but for monies advanced for medical and living expenses in the prosecution of Mr. Dupuis's suit. The representation of Mr. Dupuis by Sonnier, Hebert & Hebert was initiated by a contingency fee contract signed on April 24, 1989, which set forth the privilege granted to that law firm.
A second claim for the proceeds arises out of an assignment of claim (litigious rights) of Mr. Dupuis to Ernal Broussard in the Dupuis-Faulk lawsuit. In consideration for the assignment, Ernal Broussard paid $28,000 to Mr. Dupuis, who at the time of the transfer was still married to his wife, Dawn. The assignment was signed on June 1, 1990, but filed into the record of the lawsuit on January 2, 1991. Service was made on the defendants shortly thereafter.
The third claim arises out of a domestic proceeding between Mr. Dupuis and his estranged wife, Dawn. According to Mr. Dupuis, Dawn filed for legal separation on July 27, 1990. Mr. Dupuis failed to make child support payments, and pursuant to various judgments or anticipation of obtaining such judgments, Dawn, by writs of attachments and seizure, filed on January 17, 1991, and July 22, 1991, seized funds from the proceeds deposited in the Registry of the Court. Dawn obtained $18,602.98 in May of 1991 as a result of the January 17, 1991, writ of attachment and seizure, and another $3,740.68 on July 22, 1991. Such seizure was a direct violation of the aforesaid "Agreement and Partial Release."

ACTIONS OF THE TRIAL COURT
The matter came for hearing on August 12, 1991, to determine the priority of the *1192 claims. The trial judge ruled that Sonnier, Hebert & Hebert had first-ranking privileges upon the settlement funds for its fees and litigation expenses which were proven at trial in the amount of $29,708.53. Of that amount, $15,552.19 represented medical and living expenses advanced or loaned to Mr. Dupuis by Sonnier, Hebert & Hebert.
The trial judge also ordered that the funds which were removed by Dawn from the Registry of the Court by the July 22, 1991, writ of attachment/seizure, be returned to the Registry of the Court. However, he did not order that the funds removed in May of 1991 be returned to the Registry. The trial judge further ordered that Ernal Broussard's assignment of claim would have second ranking on the proceeds, and the privilege burden the amount remaining after the funds were disbursed to Sonnier, Hebert & Hebert.
Finally, the trial judge ordered that the writ of attachment filed by Dawn be ranked third and her privilege burden any of the proceeds remaining after the other privileges had been set aside.
Dawn appeals from this judgment, seeking priority of her claims over the attorneys' claim on that amount advanced to Mr. Dupuis for medical and living expenses and the assignment of claim to Ernal Broussard.

DISCUSSION
The privilege for attorney's fees is granted by La.R.S. 9:5001 and R.S. 37:218. Both statutes were amended by Acts 1989, No. 78 § 1, effective June 16, 1989, to include the following definitions:
9:5001
B. The term "professional fees", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.
37:218
B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.
The Rules of Professional Conduct of the Louisiana Bar Association with regard to the advances made to a client are found in Rule 1.8(e):
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
Rule 1.8(e) embodies the former Disciplinary Rule 5-103(B):
Disciplinary Rule 5-103(B) provides: "While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that the lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."
In Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976), at page 446, the Supreme Court addressed the propriety of advancing financial assistance during representation of a client:
If an impoverished person is unable to secure subsistence from some source during disability, he may be deprived of the only effective means by which he can wait out the necessary delays that result from litigation to enforce his cause of action. He may, for reasons of economic necessity and physical need, be forced to settle his claim for an inadequate amount.
*1193 We do not believe any bar disciplinary rule can or should contemplate depriving poor people from access to the court so as effectively to assert their claim. Cf, Canon 2: "A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available." Nor do we see how a lawyer's guarantee of necessary medical treatment for his client, even for a non-litigation related illness, can be regarded as unethical, if the lawyer for reasons of humanity can afford to do so.
The advances and guarantees here made are, in our opinion, more akin to the authorized advance of "expenses of litigation" than to the prohibited advances made with improper motive to buy representation of the client or by way of advertising to attract other clients. We note that the disciplinary rule permitting the advance of "expenses of litigation" includes certain instances as illustrative, but that it does not clearly exclude other expenses similarly necessary to permit the client his day in court, such as arguably are the present.
Additionally, however, if the intent of the disciplinary rule were indeed to prohibit the type of advances and guarantees here made, we have some doubt as to its constitutionality. In Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), the United States Supreme Court struck down a state regulation of the practice of law, holding that such regulation could not unreasonably handicap a claimant's right to petition the courts nor unreasonably inhibit the enforcement of a federal statutory right. For similar reasons, a court-adopted bar disciplinary rule which places an unreasonable burden upon an individual's right to enforce claims allowed him by law might be deemed violative of the access to courts guaranteed to all our people by our state constitution.
Clearly, advances for humanitarian expenses are recognized by this decision.
It is apparent under the clear wording of the statute that the medical and living expenses advanced by Sonnier, Hebert & Hebert are now included as part of the "fee" for privilege purposes. In extending the privilege to cover such advances, the legislature intended to overrule, at least in part, Calk v. Highland Construction & Manufacturing, 376 So.2d 495 (La.1979).
In Calk, supra, the Louisiana Supreme Court found that the word "fee" did not include advances which are in the nature of a loan, nor does it include the payment or reimbursement of expenses which, like medical bills, constitute the client's special damages. See also Wills v. Solida Const. Co., 543 So.2d 1365 (La.App.2d Cir.1989); Dusenbery v. Andras, 525 So.2d 682 (La. App.1st Cir.1988); Solar v. Griffin, 554 So.2d 1324 (La.App.1st Cir.1989), writ denied, 558 So.2d 582 (La.1990). However, Calk's progeny interpreted the fee privilege statutes before both were amended in 1989.
However, while we recognize the extension of the privilege, we must limit the circumstances under which the privilege for such advances attaches. Guided by Louisiana State Bar Association v. Edwins, supra, and applying its principles in the present context, the privilege applied to those advancements made in this case. The testimony of Mr. Dupuis clearly illustrates the dire circumstances requiring advancement of medical expenses and living expenses. We cannot find a hidden, improper motive on the part of Sonnier, Hebert & Hebert in advancing the medical and living expenses.
We do not accept appellant's argument that the legislature intended a different result when it added the definitions to the fee privilege statutes. We conclude that the trial court was correct in including the advances in the attorneys' privilege.
Appellant next contends that the trial court erred in ruling that the assignment had preference over the writ of attachment. Essentially, appellant contends the assignment by Mr. Dupuis to Ernal Broussard was not recorded either in the conveyance or mortgage records. Therefore, under La.R.S. 10:9-102 et seq., the security interest created by the assignment was not *1194 perfected and thus, subordinate to the rights of appellant, who had acquired a lien on the property through the writ of attachment. La.R.S. 10:9-102, 401, 301. Ernal Broussard contends that since appellant was a party to the original personal injury action, she received actual notice of the assignment when it was filed in the lawsuit. Therefore, according to Ernal Broussard, the provisions of La.R.S. 10:9 et seq., do not apply to her.
We agree that the provisions of La. R.S. 10:9-102 are inapplicable, but for different reasons. A secured transaction, within the meaning of the statutes, is any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights. (Emphasis added.) La.R.S. 10:9-102. There must be an intent to create a security interest in order to bring the transaction under the articles.
The assignment of claim/proceeds in this case is not used as a security device. The assignment herein imports a transfer by Mr. Dupuis to Ernal Broussard of the proceeds of Dupuis' lawsuit, akin to a sale and is not given as security for an antecedent indebtedness. In other words, the rights to the suit and proceeds were not given as collateral. See Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956); Shell Western E & P v. Fluid Driers, Inc., 572 So.2d 323 (La.App.3d Cir.1990), writ denied, 575 So.2d 823 (La.1991).
Since the assignment divested Mr. Dupuis of his rights in the proceeds, and since Dawn Dupuis settled her claims in the lawsuit for $1,000.00, we conclude that Dawn had no right to attach or seize the proceeds in execution of a judgment against Mr. Dupuis. However, as Ernal Broussard did not answer the appeal as directed by LSA-C.C.P. Art. 2133 requesting return of the funds seized in May of 1991, we cannot grant relief for the wrongful seizure of Ernal Broussard's property.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Dawn Dupuis.
AFFIRMED.