637 So.2d 724 (1994)
Dennis CAVALIER and Norma Cavalier
v.
CAIN'S HYDROSTATIC TESTING, INC., et al.
No. 93 CA 1214.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*725 Daniel J. Nail, Risley C. Triche, Napoleonville, for plaintiffs-appellants Dennis and Norma Cavalier.
*726 Camille A. Morvant, II, Thibodaux, for defendants-appellants Cain's Hydrostatic Testing, Ray Parrish and U.S. Fidelity Co.
William F. Page, Lafayette, for defendant-appellant Ins. Co. of North America.
Owen Joyner, Metairie, for defendant-appellee Transco.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
LOTTINGER, Chief Judge.
On September 21, 1989, Dennis Cavalier was injured while conducting hydrostatic testing of pipe at Transcontinental Gas Pipeline Corporation's (Transco) job site in Gibson, Louisiana. Transco had contracted with WHC Contractors (WHC) to fabricate and install pipelines at the Gibson compressor station. WHC, in turn, subcontracted out the hydrostatic testing of the pipe it fabricated to Cain's Hydrostatic Testing, Inc. (Cain's).
On the day of the accident, Cavalier was employed by WHC as a manual laborer. He reported to work and was instructed by his WHC supervisor, Fred Lovern, to assist Ray Parrish, a Cain's employee, with the testing of pipe which had been previously fabricated and laid out by WHC employees. During the course of hydrostatic testing, Cavalier was injured when he removed a plug from a valve which was connected to a pipe under depressurization.
Cavalier and his wife, Norma Cavalier, filed suit against Cain's, Ray Parrish and Transco for his injuries and her loss of consortium. Insurance Company of North America (now CIGNA), WHC's worker's compensation carrier, intervened to recover worker's compensation benefits. The parties stipulated that CIGNA paid a total of $67,126.77 in medical expenses and compensation benefits. A partial settlement was entered wherein CIGNA received $30,000.00, thus reducing its worker's compensation claim to $37,126.77. Settlement was also reached between Transco and the Cavaliers.
After trial on the merits, the jury returned a verdict in favor of Cavalier, assessing fault as follows: 80% to WHC; 20% to Cain's; 0% to Parrish; and 0% to Cavalier. The jury awarded Cavalier $500,000.00 in damages, but concluded that his wife, Norma Cavalier, suffered no loss of consortium. Based on this verdict, judgment was rendered, awarding Cavalier 20% of the total damages or $100,000.00 from Cain's. Additionally, pursuant to La.R.S. 23:1101, CIGNA was awarded 20% of its total workers' compensation claim. All parties have appealed, raising numerous assignments of error.

ASSIGNMENTS OF ERROR
The Cavaliers assign two errors. First, the trial court erred in awarding Cavalier only 20% of the total damages and second, the jury erred in failing to find a loss of consortium on behalf of Norma Cavalier. CIGNA reiterates the Cavaliers' first assignment of error, adding that the trial court also erred in reducing its remaining workers' compensation claim to 20%. Additionally, CIGNA asserts that the trial court erred in failing to grant a credit for future compensation obligations.
On the other hand, Cain's contends that the jury erred in finding it 20% at fault for Cavalier's injuries. Alternatively, Cain's asserts that the court erred in not holding that Cavalier was a borrowed or statutory employee of Cain's. For purposes of organization, we first address Cain's assignments of error.

LIABILITY OF CAIN'S
Cain's asserts that the jury erred in finding it 20% at fault for the accident. There are two potential bases for imposing liability on Cain's. The first is vicarious liability under La.Civ.Code art. 2320, the second is primary liability under La.Civ.Code art. 2315. See Roberts v. Benoit, 605 So.2d 1032 (La.1991); Roberts v. State, Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981).
According to La.Civ.Code art. 2320 an employer may be vicariously liable for the negligent acts of his employee.[1] To come within *727 the scope of this article, Cavalier must prove that Cain's employee, Ray Parrish, was negligent. However, after hearing the evidence, the jury assigned 0% fault against Parrish. We find no error in this assignment of fault.
Absent a finding of negligence on the part of Ray Parrish, Cain's cannot be negligent under the theory of vicarious liability. Thus, the proper inquiry is whether there is sufficient evidence of independent negligence to find Cain's liable under La.Civ.Code art. 2315.
In determining whether there is sufficient evidence to support the imposition of liability under article 2315 we must apply the four-pronged duty-risk analysis:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120, 1122 (La.1987).
The first inquiry is whether Cain's failure to train and/or warn Cavalier was a cause in fact of Cavalier's injuries. Cause in fact is a "but for" inquiry; that is, the plaintiff would not have sustained the injuries but for the defendant's conduct. Roberts, 605 So.2d at 1042.
Trial testimony reveals that this was the first time that Cavalier helped with hydrostatic testing and that neither Cain's nor Parrish made inquiries as to Cavalier's experience. Cavalier testified that he had no training relative to hydrostatic testing or the hazards involved. This accident likely would not have occurred had Cavalier been warned or properly trained in the process of hydrostatic testing.
The second inquiry is whether Cain's owed a duty to Cavalier. There are several methods of determining the existence of a duty.
"A duty can be based on a statute or ordinance or a jurisprudential rule of law." Pickett v. Jacob Schoen & Son, Inc., 488 So.2d 1257 (La.App. 4th Cir.1986) at 1258. Or, it may be determined from "... a consideration of the three R's: the relationship of the parties, the risks involved in the transaction or conduct and an appraisal of what a reasonable man would do or refrain from doing under these circumstances." Stone, Tort Doctrine, Louisiana Civil Law Treatise, Vol. 12, Sec. 305, p. 413, (1977).
Tallo v. Stroh Brewery Company, 544 So.2d 452, 454 (La.App. 4th Cir.), writ denied, 547 So.2d 355 (La.1989).
Applying these principles in the instant case we focus on the relationship between Cavalier and Cain's. Although Cavalier was not an employee of Cain's, Ray Parrish allowed Cavalier to assist in the highly technical process of hydrostatic testing. While Cavalier was under orders of WHC to assist with the testing, Parrish accepted the assistance and instructed Cavalier during the testing process. Testimony reveals that neither Cain's nor Parrish offered any training or safety instructions to Cavalier prior to the commencement of testing. Additionally, Cavalier stated that he had no prior experience in this area of oilfield work. Alvin Marks, an expert in oilfield safety, concluded that the accident was caused by improper training of Cavalier, improper supervision and failure to secure the pipe during testing. In light of these factors, we cannot say that the jury erred in concluding that Cain's owed a duty to train and/or warn Cavalier of the hazards involved in hydrostatic testing.
The third inquiry is whether Cain's breached its duty. Cain's owed a duty to train and/or warn Cavalier, a newly assigned individual in the process of hydrostatic testing. Cain's breached this duty by allowing an inexperienced worker to assist with testing without adequate training and/or warnings.
Finally, we must determine whether the harm suffered by Cavalier was encompassed in the duty breached by Cain's. This prong of the duty-risk analysis is an "ease of *728 association" inquiry. Roberts, 605 So.2d at 1045. In the instant case, we find a strong association between Cavalier's injuries and Cain's failure to properly train and/or warn of the hazards related to hydrostatic testing.
Cavalier's injury occurred when he pulled a plug from an opened valve causing a pipe to propel toward him. Appropriate training and/or safety instructions are designed to prevent such job related accidents. The duty to train and warn workers clearly encompasses the risk of injury to untrained individuals performing hydrostatic testing.
Based on the foregoing analysis, we find that there is adequate evidence to support the jury's finding of independent negligence on the part of Cain's. While Ray Parrish may not have been negligent, the jury believed that his principal, Cain's, was negligent in its failure to train and/or warn Cavalier. We find no error in this determination.

STATUTORY EMPLOYEE STATUS
Alternatively, Cain's argues that Cavalier was a borrowed or statutory employee of Cain's whose exclusive remedy against Cain's is under workers' compensation. In Billeaud v. Poledore, 603 So.2d 754, 756 (La.App. 1st Cir.), writ denied, 608 So.2d 176 (La.1992), we set forth the following factors to consider in determining whether an individual is a borrowed employee, none of which is decisive:
(1) first and foremost, who has the right of control over the employee beyond mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) whether the new employment was over a considerable length of time; (7) whose work was being done at the time of the accident; (8) whether there was an agreement between the borrowing and lending employers; (9) whether the employee acquiesced in the new work situation; and (10) whether the original employer terminated his relationship with or relinquished his control over the employee. Carter v. Chevron Chemical Co., 593 So.2d 942, 947 (La.App. 4th Cir.), writ denied, 596 So.2d 211 (La.1992); Brumbaugh v. Marathon, 507 So.2d at 875.
Cain's, the party alleging borrowed employee status, has the burden of proof regarding Cavalier's classification. See Brumbaugh v. Marathon Oil Co., 507 So.2d 872 (La.App. 5th Cir.), writ denied, 508 So.2d 824 (La.1987). Applying the Billeaud factors, the record reveals the following:
(1) Who has the right of control over the employee beyond mere suggestion of details or cooperation; although Cavalier cooperated by following Ray Parrish's instructions regarding the hydrostatic testing, he was merely complying with his WHC supervisor's orders to assist Ray Parrish.
(2) Who selected the employee; WHC supervisor, Fred Lovern, assigned Cavalier to assist Ray Parrish.
(3) Who paid the employee's wages; there was no evidence in the record to suggest that WHC did not pay Cavalier for the work performed.
(4) Who had the right to fire the employee; there was no evidence presented on this issue.
(5) Who furnished the tools and the place to perform the work; although Cain's provided the testing equipment, the pipe was fabricated and prepared for testing by WHC, and the work was performed at Transco's job site in Gibson.
(6) Whether the new employment was over a considerable length of time; according to the record, Cavalier reported to Fred Lovern for daily work assignments. There is nothing in the record to indicate that this particular assignment extended beyond one day.
(7) Whose work was being done at the time of the accident; the work being performed was pursuant to the general contract between Transco and WHC. Cain's, the subcontractor, was performing work which was part of WHC's general contract.
(8) Whether there was an agreement between the borrowing and lending employers; *729 there was no testimony regarding the substance of any agreement between the parties.
(9) Whether the employee acquiesced in the new work situation; although Cavalier performed the duties, he was merely complying with the WHC supervisor's orders to assist Ray Parrish.
(10) Whether the original employer terminated his relationship with or relinquished his control over the employee; there is no evidence that WHC terminated its relationship with or relinquished its control over Cavalier.
Although Cain's may have arguably proven some of the factors, no one factor is decisive. Considering the factors as a whole, we cannot say that Cavalier was Cain's borrowed employee.

LOSS OF CONSORTIUM
Having determined that Cavalier was not a borrowed employee and that Cain's was 20% at fault for the accident, we now turn to Norma Cavalier's loss of consortium claim. After trial on the matter, the jury found no loss of consortium on behalf of Norma Cavalier. The Cavaliers assert that this finding was error and that the judgment below should be modified to award Norma Cavalier damages for loss of consortium.
Norma Cavalier testified that she and her husband postponed having children as a result of his accident. She also stated that after the accident, Dennis could no longer cut the grass, put out the trash, or help with groceries. She added that Dennis became moody and that they engaged in sex less frequently.
The jury's conclusion regarding loss of consortium is an issue of fact which cannot be disturbed on appeal unless "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In concluding that Norma Cavalier did not suffer a loss of consortium, the jury necessarily chose not to credit her testimony. When findings of fact are based on evaluations of witness credibility, the clearly wrong standard of review requires that great deference be afforded the trier of fact's findings. Id.
Following the instructions of the supreme court, we must afford great deference to the jury because it is in the best position to evaluate Norma Cavalier's demeanor and tone of voice. Without her testimony, there is no further evidence in the record to support the claim for loss of consortium. Accordingly, we find no error in the jury's finding of no loss of consortium.

ALLOCATION OF FAULT
The jury awarded Cavalier $500,000.00 in damages and assessed Cain's with 20% fault and WHC with 80% fault. The trial judge then issued judgment in favor of Cavalier and against Cain's in the sum of $100,000.00 or 20% of the total damages. The Cavaliers and CIGNA assert that the judgment should be amended to award Cavalier the full $500,000.00. In support of this contention, they cite Gauthier v. O'Brien, 618 So.2d 825 (La.1993) and Guidry v. Frank Guidry Oil Company, 579 So.2d 947 (La. 1991).
In Gauthier v. O'Brien the Louisiana Supreme Court squarely addressed the issues presented in this case. There the court held that in furthering Louisiana's comparative fault scheme, all culpable parties, even a statutorily immune employer, must be included in the fact finder's apportionment of fault. Gauthier v. O'Brien, 618 So.2d at 828. However, the court went on to hold that:
While employer fault must be quantified by a jury to enable the jury to reach a fairer determination of the relative fault of all blameworthy parties, the judge, after the jury has returned a verdict, should disregard the proportion of fault assessed to the employer and reallot the proportionate fault of all the blameworthy parties.
Id. at 833.
In reallotting the proportionate fault, the court instructs judges to adhere to the ratio approach utilized in Guidry v. Frank Guidry Oil Company, 579 So.2d 947 (La.1991). After disregarding the jury's apportionment of fault against the employer, the ratio approach reapportions the total fault between the remaining blameworthy parties in a ratio *730 relative to their own assignments of fault.[2]Id. at 954.
In the present case, the only remaining blameworthy party is Cain's. Under Guidry's ratio approach, the reallocation of fault to Cain's is 20/20 or 100% of the total fault. Accordingly, the judgment of the trial court is amended to award Cavalier 100% of the damages or $500,000.00 from Cain's.

CIGNA'S WORKERS' COMPENSATION CLAIM
CIGNA asserts that under La.R.S. 23:1101(B), the trial court erred in reducing its worker's compensation award to 20% of the total. La.R.S. 23:1101(B) provides:
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter, may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obliged to pay compensation shall be reduced by the same percentage.
Pursuant to this statute and the foregoing reasoning, CIGNA's award should not have been reduced and the judgment is amended to award CIGNA 100% of its compensation claim in preference and priority to the claim of the plaintiff.

FUTURE WORKERS' COMPENSATION
Finally, CIGNA asserts that the trial court erred in not allowing CIGNA a credit for future compensation obligations. La.R.S. 23:1103(A)(1) provides that if damages are more than sufficient to reimburse the compensation carrier, the excess shall be awarded to the plaintiff with the compensation carrier receiving a credit on all future compensation obligations up to the amount that the plaintiff received.[3] Accordingly, the judgment of the trial court is amended to allow CIGNA a credit for future obligations on the amount received by Cavalier.

CONCLUSION
For the forgoing reasons, we affirm those portions of the judgment relating to Cain's fault and Norma Cavalier's loss of consortium. We amend the judgment of the trial court and assess Cain's with damages in the amount of $500,000.00. The judgment is also amended to award CIGNA 100% of its total compensation claim and to allow CIGNA a credit for future compensation obligations. Costs of this appeal are assessed against Cain's.
*731 AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] La.Civ.Code art. 2320 provides in pertinent part:

Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed....
[2] For further discussion of the ratio approach see Robertson, Solidary Liability in Tort Understanding Gauthier and Touchard, Louisiana Bar Journal, Oct. 1993, at 227. The following example is taken from this article:

suppose that the plaintiff's fault is assessed at 10 percent, the defendant's at 40 percent and the statutorily immune employer's at 50 percent. Under the ratio approach, the plaintiff's and defendant's relative degrees of fault become controlling. When the fault of those parties is compared, we see that plaintiff's fault is 10/50ths (20 percent) and the defendant's is 40/50ths (80 percent). Plaintiff is thus entitled to recover 80 percent of her damages from the defendant.
Id. at 228-29.
[3] La.R.S. 23:1103(A)(1) provides:

A. (1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. The employer's credit against its future compensation obligation shall be reduced by the amount of attorney fees and court costs paid by the employee in the third party suit.