764 So.2d 329 (2000)
Mary BILLIOT and Eugene Billiot
v.
K-MART CORPORATION.
No. 99 CA 1569.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
Writ Denied October 13, 2000.
*330 John M. Carmouche, Donaldsonville, Counsel for plaintiffs/appellants, Mary and Eugene Billiot.
Jack E. Truitt, Madisonville, Counsel for defendant/appellee, K-Mart Corporation.
Before: FOIL, WHIPPLE and GUIDRY, JJ.
WHIPPLE, J.
This is an appeal by plaintiffs, Eugene and Mary Billiot, from a judgment which awarded Mrs. Billiot $5,000.00 in general damages as well as certain medical expenses as a result of injuries sustained in an accident at K-Mart, but which denied Mr. Billiot's loss of consortium claim. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On January 9, 1997, Mary Billiot and a friend, Stacy Fitch, were shopping at K-Mart in Houma, Louisiana. As Mrs. Billiot proceeded down an aisle, she was struck in the left shoulder by approximately twenty plastic storage container lids, which had been knocked off of the shelf above by a K-Mart employee working on the next aisle. Mrs. Billiot, who was holding on to a shopping cart, was not knocked to the ground, and at that point, she did not think *331 that she was injured. Thus, she and Fitch left the store.
However, later that evening, Mrs. Billiot began experiencing pain, including a "pinching" in her shoulder and a headache. Thus, she sought treatment from her family doctor, Dr. Thomas Givens. Thereafter, Mrs. Billiot was also treated by several other doctors for persistent headaches, cervical pain and left trapezius pain extending down the left arm.
Mrs. Billiot and her husband filed suit against K-Mart, seeking damages for the injuries Mrs. Billiot had sustained and for loss of consortium. Following a bench trial, the trial court rendered judgment in favor of Mrs. Billiot and against K-Mart, awarding her $5,000.00 in general damages and $8,374.99 in medical expenses. Thereafter, a contradictory hearing was held on the intervention of the Billiots' previous attorney, wherein he requested reimbursement of expenses and attorney's fees. Following the hearing on the intervention, the trial court rendered an amended judgment, incorporating the terms of the original judgment and further rendering judgment in favor of plaintiffs' previous attorney, in the amounts of $1,725.00 in costs and $200.00 in attorney's fees, to be paid out of the $5,000.00 amount the court had previously awarded to Mrs. Billiot; and $3,025.55 in medical expenses paid and/or guaranteed by him, to be paid out of the $8,374.99 amount previously awarded to Mrs. Billiot for medical expenses.
From these judgments, the Billiots appeal, contending that the trial court abused its discretion in: (1) awarding Mrs. Billiot inadequate general damages and denying Mr. Billiot's claim for loss of consortium; and (2) holding that Mrs. Billiot's former attorney was entitled to reimbursement of all expenses and costs he incurred in priority to any reimbursement of expenses and costs and any attorney's fees being paid to the Billiots' present attorney.[1]

DAMAGES

General Damages
In their first assignment of error, the Billiots contend that the trial court abused its discretion in awarding inadequate general damages. Based upon our review of the record on appeal, we find no such abuse of the trial court's great discretion.
The trier of fact is accorded much discretion in fixing general damage awards. LSA-C.C. art. 2324.1; Cheramie v. Horst, 93-1168, p. 6 (La.App. 1st Cir.5/20/94), 637 So.2d 720, 723. The discretion vested in the trier of fact is great, even "vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn, 623 So.2d at 1260. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn, 623 So.2d at 1261.
In the instant case, Mrs. Billiot testified that she began experiencing pain on *332 the evening of the accident, including a "pinching" in her shoulder and a headache. Since the accident, she has continued to suffer with these problems, and as of the time of trial, Mrs. Billiot claimed that, while her condition has improved, she still suffers from headaches and a pinching in the shoulder on occasion.
Mrs. Billiot was first examined by her family practitioner, Dr. Thomas Givens, who referred her to Dr. Bradley Bartholomew, a neurosurgeon. Dr. Bartholomew treated Mrs. Billiot for approximately one month, from January 21, 1997 to February 25, 1997. She reported to him that she was experiencing cervical pain; left trapezius pain, radiating down the left arm to the fingers; and headaches. On physical examination, Dr. Bartholomew noted "a large amount of paravertebral spasm and tenderness." His initial impression was "cervical radiculopathy vs. brachial plexus injury vs. shoulder injury," and he ordered an MRI scan. The MRI was later performed and did not demonstrate any evidence of a herniated disc.
At that point, Dr. Bartholomew recommended physical therapy three times a week for three to four weeks. However, Mrs. Billiot reported to him that after three sessions of physical therapy, she experienced increased pain and headaches. As of the last visit on February 25, 1997, Dr. Bartholomew noted that it was difficult to evaluate Mrs. Billiot because of "so much pain." He recommended an EMG and nerve conduction studies on that visit; however, he had not seen Mrs. Billiot since that time and had no knowledge whether she had undergone that testing.
Mrs. Billiot was also treated by Dr. Christopher Cenac, an orthopedic surgeon, at the referral of her previous attorney. He first saw Mrs. Billiot on March 18, 1997, and treated her on ten occasions over a ten-month period. After the first visit, Dr. Cenac's diagnosis was a resolving contusion to the left shoulder and a cervical strain with post-traumatic headaches. Dr. Cenac referred Mrs. Billiot to Dr. Dan Trahant, a neurologist, for treatment of the headaches, and prescribed physical therapy, a TENS unit and medication. However, Mrs. Billiot's complaints of headaches, pain in the neck and arm and numbness in the left hand persisted.
At the recommendation of Dr. Trahant, Dr. Cenac scheduled an appointment for Mrs. Billiot with Dr. James Ponder, for cervical epidural blocks and trigger point injections. However, while Dr. Ponder performed a series of three injections, Mrs. Billiot related to him that she did not experience any relief from her pain. Thus, Dr. Ponder opined that Mrs. Billiot's symptoms were not secondary to cervical radiculitis.
When Dr. Cenac next saw Mrs. Billiot after the trigger point injection therapy, he recommended that she undergo an MMPI examination. Dr. Cenac explained that if Mrs. Billiot had had true radicular pain or a nerve root type problem, she would have received at least some temporary relief with the trigger point injections and epidural block. Because Mrs. Billiot received no relief from these injections, Dr. Cenac believed that there may be a psychological overlay interfering with Mrs. Billiot's full recovery. Given that there were some questions as to the veracity of the intensity of her symptoms, Dr. Cenac ordered the MMPI.
Mrs. Billiot underwent the MMPI in December of 1997, and Dr. Cenac went over the results with Mrs. Billiot on her next visit of January 14, 1998. The results of the MMPI indicated significant elevations on the scales measuring hysteria, hypochondriasis, depression, schizophrenia, paresthesis and psychopathic deviant. Dr. Cenac explained that the study indicated that Mrs. Billiot should continue with non-surgical treatment and that she should be treated with pain management techniques.
Based upon the results of the MMPI, Dr. Cenac referred Mrs. Billiot to Dr. *333 Marsha Redden, a clinical psychologist.[2] Dr. Redden saw Mrs. Billiot on three occasions from January through March of 1998. Dr. Redden stated that Mrs. Billiot was depressed and was informed of the need for activity as a means of treating the depression. Dr. Redden testified that she did not believe that Mrs. Billiot was exaggerating her symptoms and that by the third visit, Mrs. Billiot seemed to be improving. On the third visit, Mrs. Billiot related to Dr. Redden that she did not believe that she needed further treatment with Dr. Redden.
In sum, Mrs. Billiot's medical records indicate that she was treated by several doctors for symptoms of neck and shoulder pain, radicular pain down the left arm and headaches. While she did exhibit spasm in the shoulder area on physical examination in the months following the accident, the diagnostic tests performed did not demonstrate any disc or nerve root problem. Additionally, treatment with epidural blocks and trigger point injections offered Mrs. Billiot no relief, indicating that she did not have a nerve root problem.
In awarding Mrs. Billiot $5,000.00 in general damages, the trial court noted that her veracity was in "serious question." Mrs. Billiot had had a prior cervical fusion approximately fourteen years prior to the accident in question. While she disclosed the prior fusion to the doctors who treated her, she failed to mention to them that she had been treated only four years prior to this accident for similar complaints of neck pain, arm pain, headaches and cervical muscle spasm and that she had applied for Social Security disability benefits as a result of these complaints.[3]
On review, we find the record supports, and does not suggest manifest error in, the trial court's evaluations of credibility and quantum. Especially mindful that it is the trier of fact's function to evaluate credibility as well as to assess damages, we conclude that the trial court did not transgress the limits of its vast discretion. See Parker v. De-priest, 94-0513, p. 9 (La.App. 1st Cir.12/21/95), 666 So.2d 433, 439, writs denied, 96-0202, 96-0218 (La.4/8/96), 671 So.2d 335.
Thus, these arguments lack merit.

Loss of Consortium
Plaintiffs further contend that the trial court erred in denying Mr. Billiot's claim for loss of consortium. "Consortium" means much more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services, e.g., uncompensated work around the home. LSA-C.C. art. 2315; Smith v. Davill Petroleum Company, Inc., 97-1596, p. 11 *334 (La.App. 1st Cir.12/09/98), 744 So.2d 23, 30-31. The trier of fact's conclusion regarding loss of consortium is an issue of fact which cannot be disturbed on appeal unless "clearly wrong." Cavalier v. Cain's Hydrostatic Testing, Inc., 93-1214, p. 8 (La.App. 1st Cir.5/20/94), 637 So.2d 724, 729, affirmed, 94-1496 (La.6/30/95), 657 So.2d 975.
Mr. Billiot testified that his relationship with Mrs. Billiot had changed since the accident. He explained that Mrs. Billiot is unable to perform her normal household activities and that they do not have the sexual relationship that they had before the accident because of her pain.
However, the record further reveals that Mr. Billiot had been involved in an accident four or five years before trial of this matter, and he had undergone back surgery as a result of that accident. Mrs. Billiot acknowledged that Mr. Billiot's accident had resulted in "marital problems" in their relationship. However, she contended that his condition had improved, and prior to her accident, "things started getting back on track."
In concluding that Mr. Billiot did not suffer a loss of consortium, the trial court apparently chose not to credit the couple's testimony. When findings of fact are based on evaluations of witness credibility, the clearly wrong standard of review requires that great deference be afforded the trier of fact's findings. Cavalier, 93-1214 at p. 8, 637 So.2d at 729. Given both Mr. Billiot's prior accident and surgery and Mrs. Billiot's prior surgery and recurring complaints thereafter, we cannot say that the trial court erred in concluding that Mr. Billiot had not suffered a loss of consortium as a result of this accident.
This assignment of error is without merit.

REIMBURSEMENT OF EXPENSES TO THE BILLIOTS' FORMER ATTORNEY
Finally, the Billiots contend that the trial court erred in rendering judgment, reimbursing their former attorney all the costs and advances he paid in this matter in priority to the Billiots' present attorneys being allowed to recover costs and advances out of the proceeds of the award.[4] Unfortunately, the amounts awarded to Mrs. Billiot are insufficient to cover the costs and client advances paid by both her former and present attorneys. The original attorney paid expenses in the amount of $525.48 and made advances to his client in the amount of $1,200.00. The law firm subsequently retained by the Billiots advanced them $19,000.00.[5] The Billiots argue that, under the theory of unjust enrichment, the attorneys should recover expenses on a proportionate basis or that there should be a prorated division and sharing of losses.
A privilege for attorney's fees is granted by LSA-R.S. 9:5001 and LSA-R.S. 37:218. Included in the definition of "professional fees" in both of these statutes is the following language: "any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association." Notably, medical and living expenses advanced to a client have been held to be "costs of litigation," which an attorney may properly advance to a client under the Rules of Professional Conduct and which may be included in the attorney's privilege. See Dupuis v. Faulk, 609 So.2d 1190, 1192-1193 (La.App. 3rd Cir.1992).
Moreover, contrary to plaintiffs' assertions, while it is settled law that an *335 attorney discharged by his client, unless discharged for cause, is entitled to payment for his services on a quantum meruit basis, Hebert v. State Farm Insurance Co., 588 So.2d 1150, 1152 (La.App. 1st Cir.1991), we do not believe that the same quantum meruit principle or pro rata distribution applies when considering costs and advances paid by the discharged attorney. With regard to a fee for services, because the client is responsible for only one contingency fee, the fee should be apportioned according to the respective services and contributions of each attorney. Scurto v. Siegrist, 598 So.2d 507, 509 (La.App. 1st Cir.), writ denied 600 So.2d 683 (La.1992); Hebert, 588 So.2d at 1152. However, the same rationale does not necessarily apply to expenses of litigation and advances, for which a client obligates himself to repay.
In rendering judgment in favor of the original attorney for expenses in the amount of $525.48 and advances in the amount of $1,200.00, the trial court observed:
[T]his Court feels that the advances made by the [attorney] were: (a), made first; and when [he] evaluated the caseand evidently, properly evaluated the caseand wouldn't make any more advances and wouldn't incur any more expenses, the Court feels that [his] claim for the advances and the expenses prime the other claim of the [law] firm.
We note that the Billiots' initial attorney filed suit in this matter and represented them for several months thereafter. Thus, when the law firm subsequently undertook the representation and enrolled as counsel of record, it did so subject to the prior representation by the initial attorney, including the reimbursement owed him by the Billiots from any funds ultimately awarded. Considering the foregoing, we find no abuse of discretion in the trial court's use of a historical accounting basis in determining that the plaintiffs must reimburse the full expenses incurred by the discharged attorney in this matter in preference to reimbursement to the law firm for expenses associated with their subsequent handling of the case.
This assignment of error also lacks merit.

CONCLUSION
For the above and foregoing reasons, the March 17, 1999 judgment and March 25, 1999 amended judgment are affirmed. Costs of this appeal are assessed against plaintiffs, Eugene and Mary Billiot.
AFFIRMED.
NOTES
[1] We note that in its brief to this court, K-Mart purports to challenge the trial court's findings that an accident occurred and that K-Mart was liable to Mrs. Billiot. However, K-Mart did not appeal or answer the appeal in this matter. Thus, those issues have not been properly preserved for review and are not before us. LSA-C.C.P. art. 2133; Augustus v. St. Mary Parish School Board, 95-2498, p. 16 (La.App. 1st Cir.6/28/96), 676 So.2d 1144, 1156.
[2] Mrs. Billiot did not return to see Dr. Cenac after the January 14, 1998 visit.
[3] On appeal, Mrs. Billiot contends that the trial court committed error in calling her to the stand to question her about her prior claim for disability benefits. Mrs. Billiot contends that the trial court, in essence, called Mrs. Billiot to the stand on its own motion, which she argues is impliedly prohibited by LSA-C.E. art. 614.

At the outset, we note that Mrs. Billiot was not initially called as a witness by the court. Rather, she was first called to the stand by her own attorney and was then cross-examined by defense counsel. The issue of her application for disability benefits was later brought to light when the trial court reviewed the depositions offered by plaintiffs' counsel, in which the claim for Social Security disability benefits was discussed. Thus, at that point, the trial court recalled Mrs. Billiot to the stand to clarify the issue of her application for these benefits.
Pursuant to LSA-C.E. art. 614, a trial judge may question witnesses. In order to adjudicate a matter fairly, the trial court is well within the scope of its duty when it initiates questions from the bench. Midyett v. Midyett, 32,208, p. 7 (La.App. 2nd Cir.9/22/99), 744 So.2d 669, 674. From our review of the transcript, it is clear that the trial court remained impartial during its questioning of Mrs. Billiot and merely sought a clearer understanding of the evidence presented. Thus, we find no abuse of the trial court's discretion in questioning Mrs. Billiot.
[4] The Billiots do not challenge that portion of the award to the attorney which reimbursed him for medical expenses he paid and guaranteed.
[5] Although the exact amount of expenses paid by the Billiots' present attorneys does not appear of record, in brief, the law firm states that the expenses paid and advances to the clients totaled $24,337.36.