666 So.2d 433 (1995)
Gladys PARKER et al.
v.
Millard DEPRIEST et al.
No. 94 CA 0513.
Court of Appeal of Louisiana, First Circuit.
December 21, 1995.
*434 Edward J. Walters, Jr., Joseph P. Brantley, Baton Rouge, for Plaintiffs-Appellants, Gladys Parker and Samuel Parker.
Larry M. Roedel, Terry T. Dunlevy, Baton Rouge, for Defendant-Appellee-Appellant Canal Insurance Co.
*435 Nancy J. Marshall, Karyn J. Vigh, New Orleans, for Defendants-Appellees Daily Express, Inc. and Protective Insurance Company.
John E. Heinrich, Baton Rouge, for Intervenor-Appellee, Pan-American Life Insurance Company.
Before GONZALES and PARRO, JJ., and REDMANN,[1] J. Pro Tem.
WILLIAM V. REDMANN, Judge Pro Tem.
Plaintiff Gladys Parker[2] appeals as inadequate a November 2, 1993 judgment for $76,000 on her main demand, for personal injury from a collision between the right rear corner of her Toyota automobile and the protruding metal track of an excavator on a "low-boy" trailer being pulled by a tractor. The collision occurred as Toyota and tractor-trailer both started up from a stop light on Airline highway at Tom drive in Baton Rouge on June 7, 1988.
Plaintiff also appeals as excessive an October 27, 1993 summary judgment for $23,693.81 on the intervention by her health insurer (Pan-American Life Insurance Company).
The judgment on the main demand "is rendered against" the tractor's driver-owner (Millard Depriest) and insurer (Canal Insurance Company) and against the trailer's owner (Daily Express, Inc.) and the surety on its regulatory commission bonds (Protective Insurance Company, also its excess insurer), "as solidary obligors ... consistent with" August 13, 1993 reasons for judgment (that in fact reason that only Daily and Canal should pay, 50% each).
Canal also appeals, arguing only that its coverage was excess while Depriest operated under his lease-like contract with Daily. As appellee, Canal does not contest the jury's quantum.
Daily, by answers to appeal, seeks reversal or reduction of the judgment as against itself and judgment declaring that it provided only excess coverage, through Protective, to Canal's primary coverage.
We affirm the amounts of the judgments as not inadequate. We reverse the judgment against Daily and, to give Daily effective relief, we also reverse the judgment against Protective (to whom Daily would otherwise be liable by contractual indemnity) as a more direct relief than providing indemnity for Protective against Canal.

The accident
Although the tractor driver's fault was not contested, the evidence regarding the occurrence is discussed to indicate possibly differing evaluations of the severity of the accident.
Plaintiff's witness Lynne DeHabermann testified of damage all across the back of plaintiff's brand new car, and even testified that the stipulated photographs did not appear to be photographs of plaintiff's car because they show there was no damage across the rear, but only at the extreme right rear side; and the damages they do show do not match that witness's belief of what the damages were. Consistent with her belief of the damages, she placed plaintiff's car directly in front of the truck at the stop light rather than to the truck's left side, as it had to be to be damaged on its right side. This witness's testimony of the truck pushing the car until it managed to get away by steering to the right (onto a parking area) is similarly irreconcilable with the damage on the car's right, for the car would have had to turn to its left to separate itself from the truck and could only turn to its right after the truck had passed.
The testimony of plaintiff herself is also implausible. She testified that the roof of her car had been cut by a "blade" (as of a bulldozer), though the photographs show there was no such damage. She asserted her belief that the damages in the photographs were on the wrong side of her car. (The *436 photographs are printed correctly; "Toyota" on the car reads correctly.)
The truck driver offers little detail. He testifies that later inspection of his rig showed paint only on the metal tread (like that of a military tank) of the over-wide "excavator" he was hauling, but he was not even aware that his load had hit plaintiff's car until another trucker told him by radio. He stopped about 100 yards away and, after getting his license and other papers from his lock box, walked back to plaintiff's car. He was "flabbergasted" to see plaintiff on a stretcher with a neck brace from what he thought must have been a minor accident considering the very slow speed of his loaded tractor-trailer just starting up from a stop light. (A police car happened to be nearby, and on its request an ambulance in the neighborhood had been sent to the scene.)

The judgment on the main demand
In construing the November 2, 1993 judgment's incorporation of the August 13, 1993 reasons, we consider the procedural background.
A November 20, 1991 judgment, first noting that DePriest, Daily and Protective "failed to appear through counsel or otherwise," then decreed "that the Motion for Summary Judgment on Liability filed by the plaintiff Gladys Parker is hereby granted as to Millard Depriest and Daily Express, Inc. only." That judgment (if an appealable partial final judgment within C.C.P. arts. 966 C and 1915 A(3)[3]), although served on counsel for plaintiff and Canal, was not served as required by C.C.P. art. 1913 B on absent parties Depriest, Daily and Protective. It therefore has not become definitive as to those parties, but remains reviewable on this appeal. (We add that what was granted was not detailed, and that the precedent pleadings indicate that movers contended that Daily was liable only because of posting bonds with federal and state commissions and because its insurance with Protective showed that it retained the first $500,000 of any liability it might haveargued by plaintiff and Canal to be self-insurance. There was no suggestion of any negligence or other basis for tort liability on Daily's part, either in motion or in judgment.)
On June 19, 1993 a jury, by nine to three verdict, found that plaintiff suffered damages totalling $76,000: $13,000 past and $12,000 future medical expenses; $15,000 past and $15,000 future loss of earnings; $6,000 past and $10,000 future pain and suffering; and $5,000 permanent disability. The jury did not decide whether anyone was at fault in the accident or otherwise liable to plaintiff for her damages.
On August 13, 1993, the judge held a hearing on insurance coverage, and on that day assigned oral reasons for judgment that were transcribed and signed.
The judge reasoned that the trailer owner, as a public carrier (without assigning any tort-liability basis) was "obligated to pay the judgment" because 49 U.S.C. § 10927(a)(1) requires a carrier to post security sufficient to pay final judgments against the carrier.[4] The judge also found the trailer owner "obligated as principal and Protective ... as surety to pay the judgment by operation of state law, [R.S.] 45:163(D)(1)(B) pursuant to a $250,000 bond filed by them with the Louisiana Public Service Commission."
As to Canal, the trial judge reasoned, in essence, that its endorsement making its insurance excess to other insurance when used under lease was inapplicable because there was no other insurance (below $500,000). Thus, Canal "is also obligated to pay the damages caused by its insured."
*437 The judge then reasoned that "in accordance with the foregoing ... Daily and Canal are solidarily liable and should each pay one-half or 50% of the damages, costs and judicial interest...."
The final judgment was not handed down until November 2, 1993. It noted the jury verdict of June 19, 1993, and the hearing on insurance coverage issues held on August 13, 1993, and awarded Gladys Parker $76,000, "against the [four] defendants ... as solidary obligors and ... consistent with the Written Reasons issued by the District Court following the August 13, 1993 hearing."
Those reasons, however, as noted above, specified that Daily, as a public carrier, with bonds posted to secure payment of judgments against itself, and Canal, as Depriest's insurer, should pay 50% each of the damages.
Presumably the judgment intended the same result by its declaration that it was "consistent with" those reasons. Yet the wording of the judgment purports to cast all four defendants in solido, and does not specify the rights of contribution or indemnity that might exist among them as implied by those reasons.
We construe the final judgment as imposing 100% liability upon Depriest as the only negligent defendant; 100% upon Canal in solido with Depriest as his insurer (owing him indemnity); and 100% upon Daily and Protective in solido with Depriest as the principal and surety on the bonds filed with federal and state regulatory commissions; with Canal entitled to contribution of 50% from Daily and Protective, and vice versa; and Protective as surety entitled to indemnity from Daily as its principal.

Plaintiff's appeal
The thrust of plaintiff's argument on appeal from the main judgment is that we should disregard the jury's verdict as "tainted." Plaintiff argues we should ourselves assess the damages at $555,022.81 (over seven times the $76,000 the jury awarded).
Plaintiff first complains that the jury was tainted by the trial judge's "allowing defendants to display before the jury, over objection, a lawsuit Ms. Parker had filed and settled years prior to the instant lawsuit," and then to question plaintiff about it.
It must be said, however, that it was plaintiff's then counsel, Larry Dersona, who made the tactical decision to present that petition to the jury, by having plaintiff herself read it to them word for word (including its claim of $401,596 damages for herself and a total of $551,915). It was also he who had plaintiff tell the jury that that suit was settled, with plaintiff getting "not $2,000," she first said, although she also testified that $1,400 of medical bills were paid.
It must also be said that the "years prior" lawsuit related to an accident of October 1986, little over a year and a half before the June 7, 1988 accident from which the present suit arises. Because of similarities, the previous injuries were in any case admissible, both to question causation and to rebut statements by plaintiff (for example, that she had no previous back trouble), and to challenge her credibility.
Plaintiff's complaint on this score is, in essence, that her then counsel Dersona's tactical decision backfired.
Plaintiff second complains that her then counsel Dersona "engaged in such inappropriate conduct that, in spite of the trial Court's efforts, the plaintiffs were substantially prejudiced and thus, due to counsel's conduct, the jury was `tainted' or rendered a verdict that was manifestly erroneous." Again, plaintiff's complaint over what may have been tactical behavior by her then counsel Dersona, is that it, too, backfired. And, as "inappropriate" as indeed counsel Dersona's conduct was, it was well matched by plaintiff's personal conduct, in rejecting as wrong or possible forgeries, every witness and every document that might be thought inconsistent with her positioneven rejecting the stipulated photographs of her automobile's damage. We cite one evaluation by the trial judge, who had just sent the jury out of the courtroom after a skirmish involving plaintiff:
It's hard to get answers out of her. It's like pulling teeth. It's worse; it's oral surgery. And she's supposed to be an educated woman. A. May I respond to *438 that, I mean? The Court: No. I don't need your response. A. Okay. The Court: I'm telling youA. All right. The Court:when she asks you a question, A. Okay. The Court:if you understand the English form that she puts it to you,A. Okay; uh huh; okay. The Court:you answer it. And stop going around the bush trying to evade this and evade that. Just answer the questions. If it hurts you, it hurts you. If it helps you, it helps you. A. I'm notright. And I'm not evading. The Court: Yes, you are. Don't tell me you're not. I've been sitting here since Thursday afternoon. Now, you're going to have to answer this lady's questions. You're going to have to answer this gentleman's questions. You may not like the questions; you may not like the truthful answer, but that's the process. You brought yourself to this court for that process.
Testimony of plaintiff's out-of-court behavior may also have been a factor in the jury's evaluations. For example, Daily's claims manager Kelby Leonard testified that plaintiff telephoned him in Pennsylvania on the very day of the accident. He did not speak with her until the next day, when she demanded one million dollars in settlement for her injuries, even advising him of awards in Louisiana. He also testified, to rebut her claim she never received any money for her automobile damages, that he paid those damages, plus the cost of a rental car, to her own insurer as her subrogee. While there was some medical support for her claims, at least one doctor testified of not being advised of previous problems and then altered his opinion when fully informed. One doctor testified that plaintiff alternately located her pain on one side of the body and then on the other. Atop temporomandibular joint injury for which she used splints and anticipated a $14,000 or $15,000 operation; carpal tunnel syndrome for which she underwent surgery; "basically ... chondromalacia" and a torn meniscus and trauma requiring arthroscopic knee surgery; a back injury (she had denied earlier back problems even to a doctor who had earlier treated her back) that required over 100 physical therapy visits; plaintiff contended that the collision caused a permanent loss of vision, requiring eyeglasses, and high blood pressure requiring permanent medication.
There was evidence as to most if not all of those problems that they might have pre-dated the June 7, 1988 accident. In addition to the October 1986 slip and fall accident that was the subject of the petition that plaintiff's counsel had her read to the jury, plaintiff had also had an accident in 1973, and "there were other little accidents, bumps or whatever that there weren't any injuries, to the best of my recollection." Defense counsel then showed an April 8, 1988 one-vehicle accident (two months before this one), that counsel characterized as running through two fences and hitting a tree but that plaintiff said were not fences but "little peg things" of metal that one's body could knock down and "not a tree [but] a little branch." The damage to her truck was about $5,000, however, and the damage to the fence was about $1,000. The defense also showed that on May 11, 1988, just 27 days before the accident sued on, plaintiff went to a hospital emergency room with complaints of back and neck problemswhich plaintiff also denied, claiming that she went to the emergency room for treatment of burns from a cosmetic body spray. There was a later accident, too, on November 17, 1988 (about five months after the one sued on here), from which plaintiff and her husband received a $2,500 settlement for bodily injuries.
The extent to which all of plaintiff's complaints were caused by the June 7, 1988 accident was made quite doubtful by all of that evidence. Indeed, three of the 12 jurors voted that plaintiff did not receive any compensable personal injury whatsoever in the June 1988 accident. To say the least, the jury had ample support for concluding that plaintiff's complaints and reports, and her testimony in general, were not very credible.
We conclude that the jury was not "tainted" by the reading of the earlier lawsuit's petition at the start of trial, nor by the increasingly offensive tactics thereafter by plaintiff's then counsel and plaintiff herself; and that the record as a whole clearly does not prove that the jury was manifestly erroneous *439 in its evaluation of plaintiff's injuries. Had nine rather than only three jurors voted for it, this record would arguably have supported a verdict that plaintiff did not suffer any personal injury in this accident, or suffered far less than the $76,000 awarded (and her husband far less than the $6,500 awarded him), as defendants argue.
Notwithstanding that this court might deem one or the other of those awards either excessive or inadequate, however, Stobart v. State, 617 So.2d 880, 882 (La.1993), citing Rosell v. ESCO, 549 So.2d 840 (La. 1989), reminds us that "A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.'" A trier of fact's clearly wrong factual determinations can be upset, however, and a reviewing court of appeal has a constitutional duty to review facts. Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. But our review of this record supplies support for, and does not suggest manifest error in, the jury's evaluations of credibility and quantum. The jury's conclusions were not clearly wrong, and they cannot be reversed. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), characterizes as vast the trier of fact's discretion in fixing general damages. That vast discretion extends also to an award even only a fraction of what a reviewing court might have awarded. See Bitoun v. Landry, 302 So.2d 278 (La.1974).[5]
Especially considering that it is the jury's function to evaluate credibility as well as to assess damages, we conclude that the jury did not transgress the limits of its vast discretion.

The intervention
Plaintiff also appeals as excessive the lower court's October 27, 1993 judgment in favor of her health insurer Pan-American Life Insurance Company on its intervention for reimbursement of its payments of all the bills that plaintiff alleged were from the accident of June 7, 1988.
The health insurance contract subrogates Pan-American to "any claim" that plaintiff has against a tortfeasor and entitles it to "any sums for damages" plaintiff might collect from the tortfeasor "by action, settlement or any other manner," to the extent of Pan-American's payments.
The jury evidently did not believe that all of plaintiff's medical bills were the result solely of the June 1988 accident, and therefore awarded only $13,000 for past medical expenses. The health insurer accepted those bills as such, however, and paid them on plaintiff's behalf. The trial court's judgment enforcing Pan-American's subrogation rights is clearly correct under the contract, which has "the effect of law for the parties...." La.C.C. art. 1983 (rev. 1984).

The tractor insurer's liability
Canal, with $750,000 limits insuring Depriest's tractor and any attached trailer, does not dispute its named insured's liability, but contends that both Daily and Protective provide other insurance, in respect to which Canal's own insurance is only excess. It is excess, Canal argues, because the tractor was "being used ... pursuant to [a] lease ... or ... similar contract," in which case, a policy endorsement provides, "the insurance afforded the named insured shall be excess insurance over any other insurance."
We will accept, for argument's sake, that tractor owner Depriest's contract with carrier Daily (to supply, as an independent contractor, "complete transportation service" through his tractor and himself) was a lease "or similar contract" within Canal's endorsement. We similarly accept that named insured Depriest used his own tractor (not one he leased for years instead of buying) "pursuant to" a lease.[6] Canal still cannot escape *440 liability, because there was no other insurance to which it could be excess, and which should be exhausted before Canal's excess insurance would become available.
Daily's contract with Depriest did promise insurance "protecting the public and shipper covering the obligations imposed upon it, under applicable Federal regulation." The only insurance Daily has, however, is the $9,500,000 Protective coverage for liability after the first $500,000 of liability, which was retained by Daily.
That retention of liability, or "self-insurance," is not insurance. See, e.g., Hearty v. Harris, 574 So.2d 1234 (La.1991). Daily no more has insurance for its first $500,000 of liability than it has insurance for any liability atop the next $9,500,000 (for which alone Protective provides insurance). No one insures Daily against liability beyond $10,000,000, and no one insures Daily for liability below $500,000. The "self-insurance" retention is comparable to the deductible on one's automobile collision casualty insurance: one must oneself pay the deductible amount because one has no insurance covering it. Similarly, Daily retains ultimate liability for and must itself pay the first $500,000 of any negligence judgment against itself, because it has no insurance covering that first $500,000. Any self-insurance fund that Daily maintains (on its books, or in a bank) to cushion the impact of possible liability may provide funds to pay its uninsured, retained liability, but does not constitute insurance.
Daily did also provide bonds, to the federal Interstate Commerce Commission and to the Louisiana Public Service Commission, with Protective as surety, to show Daily's financial responsibility in case of Daily's liability for loss or injury. The bonds in evidenceone for cargo liability and both conditioned on non-payment of any final judgment against Daily for injury or damageare not construable as liability insurance.
Liability insurance undertakes, in exchange for the insured's payment of premiums, to assume and discharge as the insurer's own the insured's possible liability from specified risks. When an insured risk materializes and an insured becomes liable to a third party, the insurer is obliged to discharge the insured's liability by paying it. It is of the essence of insurance that the cost of discharging an insured's liability is a cost of the insurer, and not of the insured, and the insurer has no entitlement to indemnity or recoupment from the insured.
A bond is essentially different in that respect from liability insurance. If the surety on a bond is obliged to discharge some debt of the principal obligor (e.g., a final judgment against the principal for its negligence), the surety is entitled to reimbursement both by law, C.C. art. 3049, and, typically, by express written contract of indemnity (like that Daily signed here), by which the principal debtor obliges itself to make the surety whole for whatever the surety may pay because of having executed the bond as surety. Any risks that might make the principal liable, and the cost of discharging the liability, remain ultimately with the principal, and do not become the surety's.
We therefore conclude that there was no other insurance covering Depriest below $500,000 and that Canal, although arguably excess as to other insurance, therefore remains simply and exclusively liable as Depriest's liability insurer, at least for the first $500,000. Only above $500,000 does Protective provide other insurance.[7]
*441 Canal was correctly held liable, in solido with Depriest.

The trailer owner's liability

But Daily was not correctly held liable.
Daily was not shown guilty of causative negligence (as if, for example, it had itself improperly loaded the excavator onto the low-boy trailer). Nor was there any showing to contradict the substantive provisions of Daily's contract that preserved to Depriest the status of independent contractor, in control of the complete transportation service that he provided, including acceptance or rejection of loads and selection of the routes he would travel to any destination.
Nor, as we have discussed above, did Daily's self-insurance up to $500,000, nor its $250,000 and $750,000 regulatory commission bonds, make it liable as Depriest's insurer. The bonds and the statutes cited afford a source of execution to a person who first recovers a final judgment against the "carrier" or the "principal," i.e., Daily. Thus it is only after one gets a final judgment against Daily that the bond secures payment: the bond creates no basis for rendering such a judgment against Daily. The federal and state laws cited require only a showing of financial responsibility; and showing that Daily has money does not prove that Daily is obliged to pay a plaintiff's claim. (Plaintiffs do not argue that a trailer owner is liable, on any other basis, such as other federal law, or joint venture principles, for the negligence of a tractor owner-driver who is an independent contractor.)
Daily's self-insurance and its bonds with Protective as surety are the only grounds upon which plaintiff contends that Daily is liable, and we therefore conclude that Daily is not liable, and the judgment against it must be reversed.

Surety Protective's liability
Protective, the surety on Daily's regulatory commission bonds, neither appealed nor answered the appeal of plaintiff (although the brief of Daily also argues in behalf of Protective as appellee). Ordinarily, a court may not grant relief to such a non-complaining party. La.C.C.P. art. 2133. But, because C.C. art. 3049 and Daily's indemnity agreement both make Daily liable to Protective, Daily is also aggrieved by the judgment against Protective, for the judgment against Daily cannot be effectively reversed without reversing as to Protective, or else by specifying that Protective's implied 50% contribution right against Canal under the trial court judgment now becomes a 100% indemnity right.
Reversal is authorized by the principle of Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963). Emmons teaches that, because anyone who could have intervened may appeal, an appeal by one party enables the appellate court to modify the judgment even in favor of another who did not appeal or answer, if the appellant is aggrieved by the judgment against the non-appellant. (An answer to an appeal is equivalent to an appeal against appellant. C.C.P. art. 2133.) See also Robertson v. Perry, 370 So.2d 596 (La.App. 4th Cir.), writ not considered, 372 So.2d 1048 (La.1979) (insurer's appeal constitutes appeal from the judgment as against the insured), and Nichols v. Hodges, 385 So.2d 298 (La.App. 1st Cir.), writ denied, 386 So.2d 355 (La.1980) (an employer and its insurer's appeal entitled them to review of all facets of the case which affect their liability, including liability of the non-appealing employee).[8]
The judgment is therefore also reversed as to Protective.

Decree
The judgment of November 2, 1993 is reversed in part, insofar as it cast Daily Express, Inc. and Protective Insurance Company, and it is otherwise affirmed. Plaintiff *442 Gladys Parker is to pay three fourths and Canal Insurance Company one fourth of the costs of this appeal.
The judgment of October 27, 1993 in favor of Pan-American Life Insurance Company is affirmed at plaintiff's cost.
PARRO and GONZALES, JJ., concur.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Plaintiff's husband Samuel Parker later joined as a plaintiff and was awarded $6,500 for loss of consortium, but is not hereafter mentioned except in the quantum discussion.
[3] See C.C.P. arts. 1841 on substance and 1918 on form of final judgments.
[4] He reasoned: "Daily is obligated to pay the judgment from its $500,000 self insurance fund by ... federal law, 49 U.S.C. 10927(A)(1), i.e., the security must be sufficient to pay final judgments against the carrier [i.e., Daily itself].... Daily is obligated as principal and Protective ... as surety to pay the judgment by ... state law, [La.R.S.] 45:163(D)(1)(B) pursuant to a $250,000 bond filed by them with the Louisiana Public Service Commission.... Canal's lease ... clause does not apply because Daily has not provided Depriest with any insurance.... Thus, Canal is also obligated to pay the damages caused by its insured.... Therefore, ... Daily and Canal are solidarily liable and should each pay ... 50% of the damages ..."
[5] "[T]here are legitimate inferences which the trial judge might have drawn from the evidence which would fully support his finding that the personal injuries suffered by this plaintiff were so slight that he would be fully compensated by an award of $500.00, in spite of his twenty trips to sit under the heat lamp." Id. at 279.
[6] But compare the unclear "pursuant to lease" language of Canal's endorsement of this "basic automobile liability policy" with the language of Wenkosky v. Protective Insurance Company, 698 F.Supp. 1227, 1231 (M.D.Pa.1988), excluding coverage "while the automobile or any trailer attached thereto is used to carry property in any business."
[7] To what extent that insurance might thereafter relieve Canal is also unclear. Protective's "other insurance" clause provides that its insurance is excess as to any other, and thus denies all liability until Canal exhausts its remaining $250,000 limits. Canal's is a pro-rata clause, limiting its liability to the proportion of its policy limits to all policies' total limits, or, here, to 250,000/9,750,000 (2.56%). A court would presumably disregard those clauses as mutually repugnant and, for lack of any effective policy provision, hold the two insurers solidary obligors, each ultimately liable for its virile share of half, C.C. art. 1804 (1984 revision), until the lower-limit insurer's limit is reached, after which the higher-limit insurer is liable up to its limit. Peterson v. Armstrong, 176 So.2d 453 (La.App. 3 Cir.1965).
[8] Rushing v. Insurance Co. of North America, 417 So.2d 1351 (La.App. 3d Cir.1982), uses language inconsistent with the Emmons principle, but its question was not whether a pending appeal by an insurer precludes definitiveness of judgment as against the insured (and allows modification as to the insured), but, rather, whether preclusion by such a pending appeal continues after the appeal is no longer pending. Rushing correctly answers no.